430 A.2d 676

COMMONWEALTH of Pennsylvania

v.

Sterling George RUNKLE, Appellant.

Superior Court of Pennsylvania.

Argued March 6, 1980.

Filed May 29, 1981.

Petition for Allowance of Appeal Denied Sept. 10, 1981.

Alan M. Cashman, Hanover, for appellant.

Floyd P. Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before CERCONE, President Judge, WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

Appellant, Sterling George Runkle, takes this appeal from his conviction by a jury of two counts of maintaining gambling devices and of gambling.[1] Appellant raises two challenges to his convictions. First, whether Pennsylvania Liquor Control Board Officers have the authority to conduct a warrantless search of a private club, holding a liquor license, for gambling activities and devices. Second, whether the Commonwealth produced sufficient evidence to establish appellant's control, knowledge or maintenance of gambling devices upon the premises of the club. We conclude that both issues must be answered in the affirmative, therefore, we affirm.

The evidence produced at trial indicates that on May 31, 1978, an agent from the Pennsylvania Liquor Control Board (PLCB), A. R. Walker, on instructions from his supervisors, conducted an inspection of the Hanover Home Association [hereinafter the Club], a licensee of the PLCB. The PLCB ordered the inspection after it received an anonymous complaint indicating that gambling was conducted at the Club. Agent Walker went to the Club as indicated above and was admitted by appellant after identifying himself as a PLCB agent. Appellant followed Agent Walker into the bar. At

1. 18 Pa.C.S.A. § 5513(a)(1), (2) & (4) (1973).

that time a number of punchboards were observed by the agent on the bar in plain view, at least one of which had been used. Agent Walker saw a man at the bar draw from the punchboard although he did not see the man pay for the play. Appellant, who is registered with the PLCB as the manager of the Club, was on the premises at the time of the inspection. Prior to conducting his inspection, Agent Walker had notified the Pennsylvania State Police of his plans and after his inspection Agent Walker met with two State Police officers and relayed his information. Whereupon, on June 3, 1978, the State Police, arrived with a search warrant, searched the Club and found numerous punchboards, some partially used and some completely used. Appellant arrived at the Club during the course of the search and was arrested, along with certain other employees of the Club. Upon entering the police vehicle, appellant told the two employees that they did not have to say anything and that they worked for him and should do what he told them. Also, appellant told the police that the Club paid taxes on its income from the punchboards.

Appellant was charged with maintaining gambling devices and gambling on the dates of May 31, 1978 and June 3, 1978. The relevant section of the Crimes Code reads:

(a) Offense defined.—A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

.     .     .     .     .

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any

part thereof, to be used for the purpose of unlawful gambling.[2]

Appellant first argues that PLCB officers do not have the authority to conduct a warrantless search for gambling devices and related activities in a private club licensed by the PLCB. This argument raises two issues: (1) whether gambling is an activity to be considered by the PLCB in granting or continuing a license to sell liquor, and (2) whether agents of the PLCB must have a warrant to enter a private club to search for gambling devices and related activities.

In determining the scope of the PLCB's licensing authority we must look to both statutory and case law of the State of Pennsylvania, since the Twenty-first Amendment to the U.S. Constitution gave each state the general power to regulate the use of intoxicating liquors within the boundaries of that state.[3] The Pennsylvania Liquor Code does not itself specifically mention gambling, however, it provides that the PLCB may, "[U]pon learning of any violation of this [Liquor Code] . . . *or upon any other sufficient cause shown,* the board may . . . cite such licensee to appear . . . to show why such license should not be suspended or revoked or a fine imposed." [4]  Accordingly, it has been held that the PLCB may impose sanctions upon a liquor licensee when that licensee has permitted gambling to occur on its premises. *V.J.R. Bar Corp. v. Commonwealth Liquor Control Bd.,* 480 Pa. 322, 390 A.2d 163 (1978); *In the Matter of Quaker City Development Co., Inc.,* 27 Pa. Cmwlth. 13, 365 A.2d 683 (1976); *Union City Lodge No. 882, Loyal Order of Moose Liquor License Case,* 204 Pa.Super. 472, 205 A.2d 438 (1964). It is, therefore, settled law that under the Pennsylvania

2.  Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. 5513.

3.  Section 2 of the Twenty-first Amendment provides:
"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

4.  47 P.S. § 4–471 (Supp.1979) (emphasis added).

Liquor Code, the PLCB may revoke the license of a licensee who permits gambling to be conducted on the premises.

However, the question of whether agents of the PLCB need obtain a warrant before entering a private club to search for gambling devices must be answered within the parameters of the Fourth Amendment to the U.S. Constitution,[5] for the Twenty-first Amendment does not supersede all other constitutional provisions, *California v. LaRue*, 409 U.S. 109, 115, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972),[6] and must be read with the other provisions in mind. *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964). The general rule regarding the right of municipalities to inspect private property within its jurisdiction was set forth in *Camara v. Municipal Court*, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967), wherein the Court said,

"[O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (citations omitted).

In *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), a case decided at the same time as *Camara* and which raised a related issue, the Supreme Court held that "administrative entry, without consent, upon the

---

**5.** The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The Fourth Amendment is enforceable against the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)

**6.** In *California v. LaRue, supra*, the United States Supreme Court held that under the Twenty-first Amendment, a state could ban lewd entertainment in places where liquor is sold, notwithstanding the provisions of the First Amendment.

portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." (footnote omitted). However, the Court went on to stress that it did not mean to imply that business premises may not reasonably be inspected in many more situations then private homes, nor was it questioning accepted regulatory techniques such as licensing programs which require inspections prior to operation. The Court said that any constitutional challenge to such programs can only be resolved on a case-by-case basis under the general Fourth Amendment standard of reasonableness.

Subsequently, in *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) the Supreme Court was asked to rule on the legality of a forcible, warrantless entry into a locked liquor storeroom by federal agents without the consent of the owner. A federal statute provided that any retail dealer who refused to permit his business premises to be inspected by Treasury agents would be subject to a fine. In *Colonnade*, Treasury agents inspected the cellar of a catering establishment without the consent of the manager or the owner. The agents asked the owner to open a locked storeroom located in the cellar, and when the owner refused and asked if the agents had a warrant, the federal agents replied that they did not need one and they broke the lock on the storeroom and seized the bottles of liquor therein. In considering this case, the Court specifically noted that the general rule laid down in *See v. City of Seattle, supra*, 387 U.S. at 545, 87 S.Ct. at 1740, "that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure"—was not applicable to the instant case because historically intoxicating liquors are a special case and Congress has broad powers to design liquor laws as it deems necessary. However, the Court concluded that the search conducted in *Colonnade* was illegal under the existing statutes. The

Court ruled that Congress did not authorize forcible, warrantless entries but instead made it an offense for a licensee to refuse admission to the inspector.

Subsequently, in *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), the Supreme Court was asked to rule on the legality of a warrantless although not forcible search for firearms in a locked storeroom of a pawnshop. A Federal Treasury agent, acting under the authority of a federal statute, went to the pawnshop and requested entry into a locked gun storeroom. The pawnbroker asked the agent whether he had a warrant, and the agent told the pawnbroker that he did not but that statutory law authorized this inspection; whereupon, the agent showed the pawnbroker a copy of the statute in question. The pawnbroker then opened the storeroom and the agent seized several guns for which the pawnbroker was not licensed. Citing *Colonnade*, the Court noted that firearms, like liquor present special cases and that for a search to be reasonable under the Fourth Amendment it is not always necessary for the agent to have a warrant where that search is authorized by statute as part of an inspection scheme. The Court held that under the rule in *Colonnade*, the search in *Biswell* was reasonable because it was authorized by statute as part of an inspection scheme and because it was not done forcibly.

In a later case, *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1821, 56 L.Ed.2d 305 (1978), the Court reaffirmed its decisions in *Colonnade* and *Biswell* saying:

"Certain industries have such a history of government oversight that no reasonable expectation of privacy, see *Katz v. United States*, 389 U.S. 347, 351–352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), could exist for a proprietor over the stock of such an enterprise. Liquor (*Colonnade*) and firearms (*Biswell*) are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation."

The case now before this court is similar to *Biswell*. Appellant admitted the PLCB agent to the Club after the agent identified himself as such. The agent was authorized to conduct this search under the Pennsylvania Liquor Code, which provides that it is unlawful for any licensee to refuse to allow an authorized agent of the PLCB the right to "inspect completely the entire licensed premises at any time during which the premises are open for the transaction of business, or when patrons, guests or members are in that portion of the licensed premises wherein either liquor or malt beverages are sold."[7] Under the decisions of *Colonnade* and *Biswell*, the PLCB agent's search in the instant case was reasonable under the Fourth Amendment.

■ Appellant's next argument is that the evidence was insufficient to establish appellant's control, knowledge or maintenance of gambling devices. Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, as we must, *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979), we conclude that the evidence is sufficient to support appellant's convictions. The evidence shows that appellant was registered with the PLCB as the manager of the Club. Furthermore, the evidence also shows that appellant was working at the Club when Agent Walker saw punchboards on the bar. Subsequently, when the State Police conducted their search and arrested appellant and the barmaid and cook, the police heard appellant say to the cook and barmaid that they were appellant's employees and should not say anything to the police. Furthermore, and perhaps most damaging, is the fact that appellant told the police that the club paid taxes on all of the money they receive from the punchboard sales. Certainly, when all of this evidence is considered it is evident that appellant, who managed the Club, knew that punchboards were being used for gambling purposes in the Club and allowed persons to gather for the purpose of unlawful gambling in a place under his control.

7. 47 P.S. § 4-493 (21) (1969).

Accordingly, we find that neither of appellant's arguments have merit and we affirm.

Affirmed.