530 A.2d 423

**COMMONWEALTH of Pennsylvania**

v.

**Adolph P. BLACK, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1987.

Filed Aug. 14, 1987.

504

Lawrence J. Hracho, Reading, for appellant.

Charles B. Coleman, Assistant District Attorney, Reading, for Com., appellee.

Before CIRILLO, President Judge,[*] and BECK and HESTER, JJ.

BECK, Judge:

This is an appeal from a judgment of sentence imposed by the Court of Common Pleas of Berks County following appellant's conviction for possession of controlled substances. Appellant contends that the trial court erred by failing to suppress evidence. The police had seized the evidence pursuant to a warrantless search of a private club which was licensed to serve alcohol by the Pennsylvania Liquor Control Board ("PLCB"). We agree that the police search in question was not authorized by the Liquor Code[1] and that items obtained as a result of this search should not have been admitted into evidence. Accordingly, we vacate judgment of sentence and remand for a new trial.

[*] President Judge Cirillo has been substituted on this panel for the late Justice Roberts.

1. Pa.Stat.Ann. tit. 47, §§ 1–101 to 9–902 (Purdon 1969 & Supp.1987).

The scope of our review of the denial of a motion for suppression of evidence is firmly established. The suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of the defendant's rights. The burden of proving the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence.... On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact....

In considering whether the record supports the court's finding [sic] of facts we must restrict ourselves to reviewing the evidence presented by the Commonwealth and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.... In addition, where the suppression court's findings are amply supported by the record they may not be disturbed on appeal....

*Commonwealth v. Weik*, 360 Pa.Super. 560, 562, 521 A.2d 44, 45 (1987) (citing *Commonwealth v. Eliff*, 300 Pa.Super. 423, 428–29, 446 A.2d 927, 929–30 (1982)). Viewed in the light most favorable to the Commonwealth, the facts established by the record are as follows.[2]

Appellant Adolph Black is the manager and trustee of the Second Story Lounge. The Second Story Lounge is a private club reserved for members of the Reading Veteran Volunteer Firemans' Association. The club is located on

---

**2.** This summary of the facts is based on the transcript of appellant's preliminary hearing (R.R. at 5a–24a) and on a stipulation entered into by the Commonwealth and the defense (document filed with original record on July 15, 1985). The defendant waived his right to a suppression hearing, and the parties agreed that the preliminary hearing transcript and the stipulation would serve as the factual basis for the suppression court's decision.

the second floor of a building on Franklin Street in Reading, Pennsylvania.

In order to gain admittance to the club, one must first enter a vestibule, ring a buzzer, and display identification as to membership to a doorman seated behind a sliding partition. Behind the vestibule is a flight of stairs which leads to the second floor. On the second floor are a "back room" and a "front room" located at opposite ends of a corridor. The "back room" is an entertainment area where alcoholic beverages are served to club members. The "front room" is listed as a card room on the PLCB's forms and is part of the premises licensed for the sale of alcohol. The "front room", however, is actually an apartment which was used by appellant as his personal office.

In 1984, Agent Jan F. Llewellyn, an enforcement officer for the PLCB, was assigned to investigate a complaint concerning the Second Story Lounge. This complaint was based on information relayed to the PLCB by the Vice Division of the Reading Bureau of Police. Agent Llewellyn contacted the vice squad office and requested that municipal police participate in an "open inspection" of appellant's club. He later stated that the purpose of this inspection was to check for "possible minors and to establish the names of individuals who were working on the premises that evening." R.R. at 8a.

At 4 A.M. on December 15, 1984, Vice Squad Police Officer Richard Garipoli accompanied several PLCB investigators on an unannounced inspection of appellant's club. Officer Garipoli did not secure a warrant beforehand. He proceeded directly to appellant's office and entered without first obtaining appellant's consent. The officer noticed appellant standing next to a table on which he observed in plain view items which the officer believed to be small amounts of marijuana, cocaine, and methamphetamine. The officer then departed; he returned with a valid search warrant at 5 A.M. and seized the suspected contraband.

Appellant was arrested and charged with offenses under the Controlled Substance, Drug, Device and Cosmetic Act.

Pa.Stat.Ann. tit. 35 §§ 780–101 to 144 (Purdon 1977 & Supp.1987). His pre-trial omnibus motion was denied. After a trial by jury, he was convicted and sentenced to three to twelve months imprisonment. Following the denial of post-verdict motions, he filed this appeal.[3]

 Appellant asserts that Officer Garipoli infringed rights guaranteed to him by the fourth amendment of the federal constitution.[4] For purposes of the fourth amendment analysis, we shall focus primarily on the officer's initial warrantless search of appellant's office. If Garipoli's initial entry into the club was illegal, his presence on the club premises violated appellant's fourth amendment rights. This constitutional violation would destroy the validity of any search. The fact that the officer while illegally on the premises saw drugs in plain view and later procured a warrant would not cure the constitutional violation. A policeman ordinarily need not secure a warrant before confiscating contraband which he observes in plain view; however, he cannot properly seize evidence which he uncovers after entering a place where he has no legal right to be. *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975). Moreover, once an illegal search has taken place, a warrant issued after the fact cannot justify the seizure of evidence where that seizure is a direct result of the prior police misconduct. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We must conduct a two-step inquiry in order to determine if the officer's original warrantless intrusion violated the fourth amendment. We first consider whether appellant had a legitimate expectation of privacy in the place which

---

**3.** Appellant raises ten issues before this court. Since we reverse on the basis of the first allegation of error, we do not reach the remaining nine issues.

**4.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. fourth amendment.

was invaded. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). We must then consider whether the officer's search falls within a recognized exception to the general rule that a warrantless search of a constitutionally protected area is per se unreasonable. *See Camara v. Municipal Court,* 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1730–1731, 18 L.Ed.2d 930 (1967); *Commonwealth v. Weik,* 360 Pa.Super. at 562–564, 521 A.2d at 46.

In *Commonwealth v. Weimer,* 262 Pa.Super. 69, 396 A.2d 649 (1978), we reviewed the fourth amendment claim of employees of a private hunting club which had been subjected to a warrantless search by state troopers. We stated that "[t]he reasonableness of one's expectations will necessarily turn on the facts in the individual case evincing the strength of that belief and the measures taken to ensure privacy." 262 Pa.Super. at 74–75, 396 A.2d at 651. We noted that at the hunting club enforcement of security measures was so lax that the state troopers had been able to walk onto the premises without showing membership cards. However, in the instant case, the Commonwealth has not disputed that the Second Story Lounge admitted only members who displayed proper identification to a doorman employed for the express purpose of excluding the general public.

We conclude that as a general matter and as against most intrusions, appellant had a legitimate expectation of privacy in the premises of the private club which he managed. This expectation of privacy is worthy of constitutional protection. As the United States Supreme Court stated in *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967), "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." In addition, appellant's constitutional claim is strengthened by the fact that Officer Garipoli insisted on entering the office in which appellant worked. "As with the expectation of privacy in one's home, such an expectation in one's place of work is 'based upon

societal expectations that have deep roots in the history of the [Fourth] Amendment.' " *O'Connor v. Ortega,* — U.S. —, —, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714, 722 (1987) (citing *Oliver v. United States,* 466 U.S. 170, 178 n. 8, 104 S.Ct. 1735, 1741 n. 8, 80 L.Ed.2d 214 (1984)). *See also Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (vice-president of union local has standing to challenge warrantless police search of his office).

Nevertheless, the fact that the fourth amendment applies to government searches of a particular setting does not mean that every warrantless intrusion into that setting involves a constitutional violation. Even where a defendant is ordinarily entitled to regard an area as private, certain searches conducted for special purposes may pass constitutional muster. *See O'Connor v. Ortega, supra* (government employees ordinarily have reasonable expectation of privacy in their offices but some searches by supervisors to enforce work-related regulations are reasonable); *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (students have reasonable expectation of privacy in personal effects but some searches by faculty to enforce school regulations are reasonable). When an establishment has been licensed for the sale of alcohol, a limited exception to the warrant requirement is recognized for regulatory searches. *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). *See Commonwealth v. Lutz,* 512 Pa. 192, 201, 516 A.2d 339, 344 (1986), *vacated on other grounds sub nom. Pennsylvania v. Lutz,* — U.S. —, 107 S.Ct. 1560, 94 L.Ed.2d 754 (1987). We must therefore decide whether Officer Garipoli's search of the Second Story Lounge falls within the scope of this exception.

In *Colonnade,* an agent of the Internal Revenue Service (IRS) entered the place of business of a licensed liquor dealer in order to check for violations of excise tax laws. The dealer's employees refused to allow an inspection of a locked liquor storeroom on the grounds that the IRS agent did not have a search warrant. The IRS agent broke the

storeroom's lock, conducted a search, and seized bottles of alcohol. The question before the Court was whether these bottles should be returned to the dealer and suppressed as evidence.

The United States Supreme Court first noted that warrantless searches of liquor stores by the IRS were authorized by a federal statute. This statute was found to be constitutional in light of the long history of extensive regulation of the liquor industry and the government's special interest in controlling the liquor trade; "[a]s respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonableness for searches and seizures." 397 U.S. at 77, 90 S.Ct. at 777. However, upon interpreting the statute in question, the Court determined that Congress did not grant IRS agents the right to force their way past locked doors. Since the agent in *Colonnade* had exceeded the authority which had been extended to him by the statute, the justices found that his warrantless search of the liquor storeroom must be judged by the same fourth amendment standards which generally apply to government intrusions onto private commercial property. Accordingly, the evidence seized as a result of the search was suppressed.

The *Colonnade* decision illustrates the importance of ascertaining whether a statute authorizes a search and if it does, the permissible extent of the search, i.e., whether a particular warrantless search of a business has been sanctioned by the legislature. Since *Colonnade*, both the United States Supreme Court and Pennsylvania's appellate courts have upheld warrantless searches of "closely regulated industries"[5] in cases in which the search was autho-

5. A "closely regulated industry" traditionally has been defined as an industry in which the government has a special interest either because of a long history of pervasive state regulation or because of the exceptional nature of the risks involved. *See Commonwealth v. Lutz,* 512 Pa. at 201–204, 516 A.2d at 344–345. The United States, Supreme Court recently expanded this definition to include additional industries such as automobile dismantling in which the "regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will

rized by a statute or by a duly promulgated regulation. *See Commonwealth v. Runkle*, 287 Pa.Super. 422, 430 A.2d 676 (1981) and *In re Catering Club Liquor License*, 63 Pa. Commw. 313, 438 A.2d 662 (1981) (searches by PLCB agents pursuant to Liquor Code). *See also New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (search of automobile junkyard pursuant to New York Vehicle and Traffic Law); *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (search of stone quarry pursuant to Federal Mine Safety and Health Act of 1977); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (search of weapon dealer pursuant to federal Gun Control Act of 1968); *Department of Envtl. Resources v. Fiore*, 512 Pa. 327, 516 A.2d 704 (1986) (Larsen, concurring) (search of hazardous waste disposal facility pursuant to Solid Waste Management Act); *Peterson v. Pennsylvania State Horse Racing Comm'n*, 68 Pa.Commw. 353, 449 A.2d 774 (1982) and *Lanchester v. Pennsylvania State Horse Racing Comm'n*, 16 Pa.Commw. 85, 325 A.2d 648 (1974) (searches on grounds of race track pursuant to Rules of Racing adopted in furtherance of Thoroughbred Horse Race Meeting Corporations Act). This approach has been justified on the grounds that the proprietor of a business in such an industry is on notice that his property will be searched in the manner provided by law. *See Biswell*, 406 U.S. at 316–317, 92 S.Ct. at 1596–1597; *Commonwealth v. Lutz*, 512 Pa. at 201–204, 516 A.2d at 344–345.

On the other hand, it is equally true that "[warrantless] inspections of commercial property may be unreasonable if they are not authorized by law ..."[6] *Donovan v. Dewey*,

be subject to periodic inspections undertaken for specific purposes." *New York v. Burger*, —— U.S. ——, —— n. 16, 107 S.Ct. 2636, 2645 n. 16, 96 L.Ed.2d 601, 615 n. 16 (1987) (citing *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981)).

**6.** This principle was underscored by the United States Supreme Court's recent decision in *New York v. Burger*. The court held that: ... warrantless inspection ... even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which

452 U.S. at 599, 101 S.Ct. at 2538. In the *Leonardziak Liquor License Case*, 210 Pa.Super. 511, 233 A.2d 606 (1967), detectives from the Reading police department, acting independently of the PLCB, entered a licensed club without a valid warrant and seized gambling paraphernalia. We suppressed this evidence because this search was not authorized by the Liquor Code.[7] Similarly, in *State v. Williams*, 84 N.J. 217, 417 A.2d 1046 (1980), the New Jersey Supreme Court suppressed evidence seized from a tavern storage room by police detectives who conducted a warrantless search which was not expressly authorized by New Jersey's liquor control statute.

■ We interpret these cases as striking a careful balance between the government's need to regulate liquor traffic and the liquor licensee's interest in personal privacy. Consistent with the fourth amendment, state legislatures have broad (though not unlimited) power to design procedures for warrantless inspections of places where alcohol is sold. Yet, the licensee still retains a legitimate expectation of privacy as to searches which represent a significant departure from the regulatory system which the legislature has approved. By adopting this approach, we recognize the essentially private nature of licensed clubs which exclude the general public. We also seek to preserve the integrity of statutory schemes which confine extraordinary powers of search and seizure to specialized investigators acting under carefully defined circumstances.

the inspection is made.... Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." ... Finally, ... the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

— U.S. at —, 107 S.Ct. at 2643–44, 96 L.Ed.2d at 614 (citations omitted). It follows that an administrative search which is clearly not authorized by any regulatory statute or regulation is inconsistent with the fourth amendment.

7. *Leonardziak* reserved the issue of whether the police may ever conduct warrantless searches in the presence of properly authorized individuals. 210 Pa.Super. at 514, 233 A.2d at 608.

■ With this in mind, we confront the precise issue posed by Officer Garipoli's entry into the Second Story Lounge; is a warrantless police search of a licensed club which occurs during the course of a joint investigation by police and PLCB personnel authorized by the Liquor Code? In order to decide whether the statute authorizes the police to conduct warrantless searches under such circumstances, we must closely examine the Code provisions which govern investigations of drinking establishments.[8]

Section 2-209 provides in part:

> Such *employes of the board as are designated "enforcement officers" or "investigators"* are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest on view, except in private homes, without warrant, any person actually engaged in the unlawful sale, importation, manufacture or transportation, or having unlawful possession of liquor, alcohol or malt or brewed beverages, contrary to the provisions of this act or any other law of the Commonwealth. *Such officers and investigators* shall have power and authority, upon reasonable and probable cause, to search for and to seize without warrant or process, except in private homes, any liquor, alcohol and malt or brewed beverages unlawfully possessed, manufactured, sold, imported or transported, and any stills, equipment, materials, utensils, vehicles, boats, vessels, animals, aircraft, or any of them, which are or have been used in the unlawful manufacture, sale, importation or transportation of the same.

Pa.Stat.Ann. tit. 47, § 2-209 (Purdon 1969) (emphasis added).

Section 5-513 provides in part:

> Every place operated under license secured under the provisions of this article where any alcohol ... covered by the license is ... used ... in connection with a licensee's business, shall be subject to inspection by *members of the*

---

8. We have also considered the regulations adopted pursuant to the Liquor Code. 40 Pa.Code §§ 1.1–17.1

*board* or by *persons duly authorized and designated by the board* at any and all times of the day or night, as they may deem necessary, (a) for the detection of violations of this act or of the rules and regulations of the board promulgated under the authority of this act, or (b) for the purpose of ascertaining the correctness of the records required by this act to be kept by licensees and the books and records of licensees, and the books and records of their customers, in so far as they relate to purchases from said licensees, shall at all times be open to inspection by the *members of the board* or by *persons duly authorized and designated by the board* for the purpose of making inspections as authorized by this section. *Members of the board* and the *persons duly authorized and designated by the board* shall have the right, without fee or hindrance, to enter any place which is subject to inspection hereunder, or any place where records subject to inspection hereunder are kept, for the purpose of making such inspections.

Pa.Stat.Ann. tit. 47, § 5–513 (Purdon 1969) (emphasis added).

Section 4–493(21) provides that it shall be unlawful

[f]or any licensee, or his servants, agents or employes, to refuse *the board or any of its authorized employes* the right to inspect completely the entire licensed premises at any time during which the premises are open for the transaction of business, or when patrons, guests or members are in that portion of the licensed premises wherein either liquor or malt or brewed beverages are sold.

Pa.Stat.Ann. tit. 47, § 4–493(21) (Purdon 1969) (emphasis added).

In the case *sub judice*, we conclude that Officer Garipoli's search of appellant's office clearly transcended this statutory framework. The statute specifies those categories of individuals who have been entrusted by the legislature to enforce the liquor laws by conducting special searches and inspections, i.e., enforcement officers, investigators, mem-

bers of the board, and persons duly authorized by the board.

A municipal policeman such as Officer Garipoli is certainly not a PLCB "enforcement officer" or "investigator". *See Fraternal Order of Police v. Pennsylvania Labor Relations Bd.*, 71 Pa.Commw. 316, 454 A.2d 686 (1983), *aff'd*, 502 Pa. 541, 467 A.2d 323 (1983). Nor is a municipal policeman a "member of the board".[9] Furthermore, Officer Garipoli did not become a "[person] duly authorized and designated by the board" simply by raiding appellant's club at the request of PLCB Agent Llewellyn. In the absence of any evidence of record as to whether Agent Llewellyn's request was documented or approved by his superiors, we surely cannot regard the invitation extended to Officer Garipoli as a form of due authorization to inspect within the meaning of the statute.

Moreover, section 5–513 must be read in para materia with section 4–493(21); viewed together, the two sections indicate that "persons duly authorized and designated by the board" were intended to be "authorized employes" of the board who are under the direct supervision of board members.

█ We therefore hold that the Liquor Code in its present form does not authorize warrantless police searches of private licensed clubs.[10] This does not mean that it would be beyond the power of the General Assembly to delegate the responsibility for conducting administrative searches of licensed clubs to the police. *Cf. New York v. Burger*, —— U.S. at ——, 107 S.Ct. at 2651, 96 L.Ed.2d at 623 (upholding constitutionality of statute which explicitly authorizes police

9. Section 2–201 of the Code provides in part:
 An independent administrative board to be known as the "Pennsylvania Liquor Control Board" is hereby created. The board shall consist of three members to be appointed by the Governor by and with the advice and consent of two-thirds of all members of the Senate.
 Pa.Stat.Ann. tit. 47, § 2–201 (Purdon 1969).

10. We express no opinion as to the effect of any changes in the state liquor laws adopted during or after June, 1987.

officers to inspect automobile junkyards). Yet until licensees are put on notice by statute or valid regulation that their clubs are subject to inspection by the police, licensees will remain entitled to full fourth amendment protection as against police intrusions.

In summary, appellant had a reasonable expectation of privacy in his club for fourth amendment purposes. Therefore, the police were required to obtain a warrant before searching the club unless the Commonwealth could show that the police search was within a recognized exception to the warrant requirement. Since Officer Garipoli acted without authorization, he was not exempt from the warrant requirement. Thus, his search was illegal, and the evidence seized as a result of the search should have been excluded from appellant's trial.

Judgment vacated and case remanded for a new trial. Jurisdiction is relinquished.