685 A.2d 1030

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**George SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 30, 1996.

Filed Nov. 27, 1996.

490

Daniel Conner, Philadelphia, for appellant.

Colin M. Jenei, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, POPOVICH and SCHILLER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Bucks County, which was entered after a jury convicted appellant of theft, receiving stolen property and conspiracy. We reverse.

Appellant first alleges that the trial court erroneously denied his motion to suppress physical evidence. Appellant maintains that all physical evidence seized from the vehicle in which he was riding should be suppressed because: (1) The investigative stop was illegal; (2) the officers' sighting of a remote CD changer in the vehicle was an illegal search; and (3) the written consent to search form was tainted by the initial illegal search.

When a criminal defendant appeals a ruling of a suppression court, this court will consider the prosecution's evidence and any of the appellant's evidence which is uncontradicted. *Commonwealth v. Wells*, 441 Pa.Super. 272, 657 A.2d 507 (1995), *appeal denied*, 542 Pa. 668, 668 A.2d 1131. The suppression court's ruling will only be reversed if its legal conclusions were erroneous. *Id.*

We apply the foregoing standard to the relevant facts and procedural history summarized as follows: On October 11, 1995, the Middletown Township Police Department was informed that an attempted automobile theft might be in progress at the Summit Trace Apartments. Suppression Hearing, 3/6/96, p. 15. While Officer Kucinski was patrolling in the township, he received a radio transmission at 12:10 a.m. in which he was informed about the attempted theft. Suppression Hearing, 3/6/96, p. 14. The individual who originally contacted the police saw the suspects return to the apartment

complex. After observing the suspects a second time, the witness was able to give the police more specific information. N.T., 3/6/96, pp. 42–45. Subsequently, Officer Kucinski received a second radio transmission at 12:21 a.m. in which he was told the three suspects were thought to be male and were seen leaving the complex in a dark-colored Jeep Wrangler. The witness was not able to identify the race of the suspects nor the direction in which they were traveling. Suppression Hearing, 3/6/96, pp. 16–19.

As he was driving to the apartment complex, Officer Kucinski slowed to cross over railroad tracks and passed a vehicle which was traveling in the opposite direction. Officer Kucinski identified the vehicle as a dark-colored Jeep Wrangler with three male occupants. Suppression Hearing, 3/6/96, pp. 19–20. Officer Kucinski observed the vehicle at 12:27 a.m. at a location approximately three miles from the Summit Trace Apartments, traveling on a road leading away from the crime scene. Suppression Hearing, 3/6/96, p. 20. At that point, Officer Kucinski proceeded to make an investigative stop of the vehicle. Suppression Hearing, 3/6/96, p. 21.

Officer Kucinski instructed appellant and the other two occupants to exit the vehicle. Officer Kucinski and three other officers obtained identification from the suspects. The officers discovered *that the Jeep Wrangler was owned and registered to the driver's uncle.* N.T., 3/6/96, pp. 26–27. The officers conducted a protective search of each person. One of the officers retrieved an envelope from a pocket of the driver of the Jeep Wrangler. The envelope contained vehicle registration information which matched a vehicle which was owned by a resident of Summit Trace Apartments. Suppression Hearing, 3/6/96, pp. 22, 41.[1] At this point appellant and the

---

1. At some point during the stop the officers were informed that a vehicle break-in had occurred as opposed to an attempted automobile theft. Suppression Hearing, 3/9/96, p. 23. The officers received a radio transmission in which they were told that certain articles were missing from a vehicle at the apartment complex. When questioned about this radio transmission at the Suppression Hearing, Officer Kucinski testified that he could not recall if they received specific

other suspects were arrested, handcuffed and placed in the patrol vehicles.  Suppression Hearing, 3/6/96, pp. 24–25.

The officers observed through a window of the Jeep an object which was later identified as a remote CD changer.[2] The object was not removed from the vehicle at that time. Suppression Hearing, 3/6/96, p. 34.  Officer Kucinski testified that the remote CD changer was observed after the suspects were arrested.[3]  Suppression Hearing, 3/6/96, pp. 24–25.

The suspects were subsequently taken to the police station. The driver of the Jeep Wrangler was given *Miranda* warnings and then he signed a consent form which gave the officers permission to search the vehicle.  Suppression Hearing, 3/6/96, pp. 29–30.  Also, Detective Sproehnle informed appellant of his *Miranda* rights.  Appellant then waived his right to

information about the stolen articles.  Suppression Hearing, 3/6/96, p. 23.

2. Detective Sproehnle testified that at the time of the investigative stop the officers believed the object was a pager.  Suppression Hearing, 3/6/96, p. 34.

3. During cross-examination at the Suppression Hearing, Officer Kucinski was questioned as follows:

Q. And Officer Kneiss found the sticker;  correct?.
A. Sticker and registration card.
Q. On Mr. Bell;  correct?
A. Correct.
Q. They were placed under arrest and placed in your vehicle; correct?
A. Well, Mr. Smith was placed in my vehicle.
. . . . .
Q. Officer Kneiss and Officer Burnett searched the car;  is that correct?
A. I don't believe there was an actual search at the scene.  I know that they looked inside there, but I don't think anything was taken out of it at the scene.
Q. Well, you testified at the preliminary hearing that a CD remote was found at the time of the stop.  Do you recall this?
A. I believe that was laying on the floor with a couple of cellular telephones.
Q. And you noticed that at the scene of the stop;  correct?
A. Correct.
Q. And that was after these individuals were handcuffed and placed in your vehicles;  correct?
A. Correct.
Suppression Hearing, 3/6/96, pp. 25–26.

have an attorney present and gave a statement to the detective. In his statement, appellant admitted that he rode in the Jeep Wrangler to a shopping center across from the Summit Trace Apartments. Appellant claimed that he remained in the vehicle at all times. N.T., 3/6/96, pp. 7–9.

Appellant and the two other individuals were charged with theft, receiving stolen property and conspiracy. Appellant filed pre-trial motions to suppress the physical evidence and his statement. The trial court suppressed evidence of the envelope found during the pat-down of a co-defendant but permitted appellant's statement and the CD remote changer to be admitted. Appellant was subsequently tried without a jury and found guilty of all charges.

In order to analyze whether the ruling of the suppression court was valid, we must first determine whether or not the investigative stop was valid. A police officer may stop a vehicle if he has reasonable grounds to believe that the occupants were involved in criminal activity. *Commonwealth v. Wells*, 441 Pa.Super. 272, 657 A.2d 507 (1995), *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigative stop is considered a "seizure", therefore it must comply with the constraints contained within the Fourth Amendment of the United States Constitution. *Commonwealth v. Knotts*, 444 Pa.Super. 60, 663 A.2d 216 (1995).

In *Wells, supra.*, this Court held that a investigative stop of a vehicle was proper where an officer observed a vehicle which matched the description of a vehicle involved in a recent abduction and which was located one-half mile from the site of the crime. In another similar case, this court held that an officer properly stopped a vehicle after receiving information about a robbery that occurred less than two blocks away and where the suspect's vehicle matched the description given to the officer. *Commonwealth v. Monroe*, 356 Pa.Super. 109, 514 A.2d 167 (1986), *appeal denied*, 525 Pa. 644, 581 A.2d 570.

In the present case, the officer was driving to Summit Trace Apartments in response to a report of an attempted auto theft. While driving to the apartment complex, Officer

Kucinski received a second report in which he was told that three suspects were seen leaving the apartment complex in a dark-colored Jeep Wrangler. The suspects were thought to be males. Suppression Hearing, 3/6/96, pp. 16–19. Within six minutes of receiving the second report, Officer Kucinski passed a vehicle which matched the description and which was occupied by three males. The officer knew that it was possible to leave the apartment complex on the road which the suspects were traveling. Suppression Hearing, 3/6/96, pp. 19–20. Based on the officer's observations and information which he possessed about the suspect vehicle, it was reasonable to suspect the occupants of the vehicle had committed the recent crime.

Our next inquiry relates to the validity of the *Terry* search. After stopping the vehicle, Officer Kucinski instructed appellant and the other occupants to exit the vehicle so that the officers could perform a protective search of each person. During the pat-down search of the co-defendants, an officer removed an envelope from a pocket of one of the co-defendants. An officer may perform a limited search of an individual to detect weapons if he reasonably believes criminal activity is afoot and that the person may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is one exception to the general rule that warrantless searches are presumed unreasonable. Under *Terry*, police officers have limited authority to search an individual. The justification for the search is

> the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

*Terry*, 392 U.S. at 29, 88 S.Ct. at 1884. The United States Supreme Court has recently expanded the scope of the *Terry* search through the adoption of the "plain-feel" exception. In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the court held that an officer may seize non-threatening contraband during a *Terry* search if the contraband is detected through the officer's sense of touch. The

contraband must be "immediately apparent" from the officer's pat-down in order for the "plain-feel" exception to apply. *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993).

Based upon the information which linked appellant to the reported crime, it was appropriate for the officers to perform a protective search of appellant and the co-defendants. However, we agree with the lower court that the officer exceeded the scope of the protective search as far as the removal of the envelope was concerned. Clearly, there is no evidence to substantiate that the officer perceived the envelope to be a weapon or identifiable contraband. We find that such evidence was properly suppressed.

Our final inquiry in regard to the ruling of the suppression court relates to evidence obtained after the illegal seizure of the envelope. After the envelope was illegally seized from the co-defendant and the suspects were arrested, the officers observed the remote CD changer on the floor of the Jeep Wrangler. Subsequently, the three individuals were taken to the police station where the driver of the Jeep Wrangler consented to a search of the vehicle, and appellant gave a statement to Detective Sproehnle. Appellant claims that such evidence was "fruit of the poisonous tree" and therefore inadmissible.

Where evidence is obtained subsequent to an illegal search, such evidence will be held inadmissible unless it is sufficiently distinguishable from the original illegality. *Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Commonwealth v. Germann*, 423 Pa.Super. 393, 621 A.2d 589 (1993) (evidence was tainted because the police would not have arrested defendant-motorist or impounded the vehicle if contraband had not been discovered through the illegal search). A proponent of subsequently discovered evidence must demonstrate that it is not tainted by the illegal search. *Commonwealth v. Mesa*, 453 Pa.Super. 147, 683 A.2d 643 (1996). But for the illegally obtained evidence, the police in the present case would not have had probable cause to arrest appellant.

We find that all evidence obtained after the illegal search of the envelope was acquired through the exploitation of the illegally obtained evidence.[4]

Judgment of sentence is vacated, and this case is reversed and remanded for proceedings not inconsistent with this opinion.   Jurisdiction relinquished.[5]

4.   The lower court concluded that the remote CD changer was admissible because it was found in plain view.   Under the "plain view" exception to the warrant rule, a warrantless search will be valid if the officer was lawfully present and inadvertently observed the object linked to the criminal activity.   *Commonwealth v. Merkt*, 411 Pa.Super. 127, 600 A.2d 1297 ... (1992).

We reject this argument.   Even if the officers were legally present and inadvertently viewed the remote CD changer, they had no reason to know the object was related to criminal activity.   The testimony is unclear as to when the officers received information about the stolen objects.   Furthermore, it is not clear what information the officers obtained about those objects.   As previously noted, Officer Sproehnle testified that the officers thought the remote CD changer was a pager as opposed to a remote CD changer.

5.   Because this case is being remanded for a new trial, it is not necessary for this Court to address appellant's allegations of ineffectiveness of trial counsel.