**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Robert Lonnie HUDAK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1997.

Filed March 30, 1998.

Robert E. Mielnicki, Pittsburgh, for appellant.

James R. Gilmore, Assistant District Attorney, Pittsburgh, for the Commonwealth, appellee.

Before POPOVICH, HUDOCK and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following appellant's convictions on the charges of removal or falsification of identification number, 75 Pa.C.S.A. § 7102(b), dealing in vehicles with removed or falsified numbers, 75 Pa.C.S.A. § 7103(b), and receiving stolen property, 18 Pa.C.S.A. § 3925(a). On appeal, appellant alleges that the suppression court erred in denying his motion to suppress evidence obtained as a result of a warrantless search of his auto body shop which was conducted pursuant to 75 Pa.C.S.A. § 6308(c) in the absence of probable cause.[1] Upon review, we agree with appellant, and, accordingly, reverse.

In reviewing a denial of a motion to suppress evidence, this court must determine whether the record supports the factual findings of the suppression court. *Commonwealth v. Marinelli*, 547 Pa. 294, 315–316, 690 A.2d 203, 214 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998).

---

**1.** Appellant also alleges that the trial court erred in failing to merge his convictions under 75 Pa.C.S.A. § 7102(b) and § 7103(b) for sentencing purposes. However, we do not need to address this issue in light of our disposition of this case.

"When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. (Citations omitted.)" ... Thus, if sufficient evidence is of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge.

*Marinelli, supra* (quoting *Commonwealth v. Queen,* 536 Pa. 315, 319, 639 A.2d 443, 445 (1994)).

Applying this standard of review, the relevant facts are as follows: On December 1, 1995, Sgt. Dale Provins and Officer Jeffrey Judd of the Borough of Jefferson Police Department went to Bob's Auto Body in West Elizabeth to inspect records, documents and vehicles at that location to determine whether the vehicles were legally on the premises and properly owned by appellant. Upon arriving at the location, Sgt. Provins approached appellant, the owner of Bob's Auto Body, and informed him that he was there for the purpose of checking vehicle information. Sgt. Provins expressly informed appellant that they had received a tip that appellant was dealing in "hot" auto parts. At that time, Sgt. Provins was carrying a copy of the Vehicle Code and advised appellant that under 75 Pa.C.S.A. § 6308(c), appellant was required to allow the officers to inspect the premises. Appellant permitted the police to inspect Bob's Auto Body without a warrant.

Sgt. Provins and Officer Judd proceeded to inspect the vehicles that were inside, adjacent to and outside of the garage. The officers were not looking for a specific vehicle but rather were checking all the vehicles on the premises and the auto parts of the vehicles that were being serviced. During their inspection, the officers observed a red and white Blazer, listed as a 1983 Chevrolet, in which the Vehicle Identification Number (VIN) was bent, damaged and did not appear to be properly attached. The officers noticed that other identification plates and numbers had been removed from the vehicle and that it was equipped with auto parts that were not part of the original model year of that vehicle. Suspecting that the vehicle may have been stolen, Sgt. Provins contacted the state police and seized the Blazer, title, registration card and the license plate pursuant to his authority under 75 Pa.C.S.A. § 7105(a). Subsequently, the police determined that the VIN number on the Blazer had been removed from another vehicle and had been glued on top of the original VIN number. The top VIN number was for a 1983 Chevrolet station wagon that was registered to appellant's brother, William Hudak. However, the underlying VIN number was for the 1992 Chevrolet Blazer, which had been reported stolen.

On December 4, 1995, after a telephone conversation with Sgt. Provins, appellant went to the police station for an interview. Both Officer Judd and Sgt. Provins advised appellant of his *Miranda*[2] rights, which appellant waived orally and in writing. Appellant provided the officers with a written statement in which he confessed that he bought the Blazer knowing it was stolen, removed a VIN number from another vehicle which he bought from salvage, placed that VIN number on the stolen vehicle and altered the documents. Appellant informed the police that he gave the Blazer to his brother to settle a debt, without his brother's knowledge that the vehicle was stolen. Appellant was charged with one count each of removal or falsification of identification number, dealing in vehicles with removed or falsified numbers and receiving stolen property.

Appellant filed an omnibus pre-trial motion to suppress, which was denied after a hearing on January 13, 1997. Appellant proceeded to a bench trial immediately after the suppression hearing. At trial, the testimony from the suppression hearing was incorporated without objection. The trial judge found appellant guilty on all three counts and imposed consecutive sentences of one year pro-

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

bation for count one, one year probation for count two, and three years probation for count three and ordered restitution paid in the amount of $13,929. This appeal followed.

 Presently, appellant challenges the suppression court's denial of his motion to suppress evidence obtained as a result of a warrantless search and seizure conducted at his auto body shop on December 1, 1995. Appellant's argument centers upon 75 Pa. C.S.A. § 6308(c), which reads:

> (c) **Inspection of garages and dealer premises.**—Any police officer or authorized department employee may inspect any vehicle in any garage or repair shop or on the premises of any dealer, miscellaneous motor vehicle business, salvage motor vehicle auction or pool operator, salvor, scrap metal processor, or other public place of business for the purpose of locating stolen vehicles or parts or vehicles or vehicle parts with identification numbers removed or falsified. The owner of the garage or repair shop or dealer or other person shall permit any police officer or authorized department employee to make investigations under this subsection.

75 Pa.C.S.A. § 6308(c). First, appellant claims that the instant search does not fall within the confines of an administrative inspection pursuant to § 6308(c) and, therefore, a search warrant was required. Second, if the police correctly complied with the statute, appellant contends that § 6308(c) is unconstitutional under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution because it permits searches without a warrant, probable cause or voluntary consent.

The Fourth Amendment's prohibition against unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. The owner or operator of a business, therefore, has an expectation of privacy in commercial property that society is prepared to consider to be reasonable. That expectation exists not only with respect to traditional police searches conducted to investigate violations of criminal laws but also with respect to administrative inspections designed to enforce regulatory statutes. As such, a warrant is required to conduct an administrative inspection unless one of the exceptions to the warrant requirement applies.

*Commonwealth v. Petroll,* 696 A.2d 817, 825 (Pa.Super.1997) (citations and footnote omitted), *allocatur granted, in part,* —— Pa. ——, 703 A.2d 1034 (1997).

Herein, appellant maintains that the statute permits a routine administrative inspection to deter potential criminal activity but does not authorize investigations of suspected criminal activity absent a warrant or an exception to the warrant requirement. Appellant contends that the December 1, 1995 search was not a routine inspection, but instead was conducted for the purpose of investigating a report of suspected criminal activity occurring at Bob's Auto Body.

Appellant relies on *Commonwealth v. Slaton,* 530 Pa. 207, 608 A.2d 5 (1992) to support his argument that the instant search does not fall within the authority provided to the police under § 6308(c) because the search was conducted specifically to gather evidence of criminal activity. In *Slaton, supra,* on November 21, 1983, a narcotics agent went to Lou's Pharmacy to investigate Merriweather, whom the agent believed was forging prescriptions. The agent identified himself to the owner, Slaton, stated his purpose and requested to inspect Slaton's Schedule II records pursuant to his authority to perform an administrative inspection under 35 P.S. § 780–124(b)(2). Slaton permitted the agent to conduct the review of his records. While the agent conducted the investigation, he found forged prescriptions, none of which related to Merriweather.

Prior to conducting a second inspection at Lou's Pharmacy on December 6, 1983, agents were aware that the prescriptions previously removed from the pharmacy files were forgeries, and they believed Slaton himself was responsible. The agents did not inform Slaton of their suspicions or that the focus of the investigation had changed to him. Eventually, on January 16, 1985, agents obtained a warrant to search the pharmacy, seized the records in question and arrested Slaton.

Our supreme court rejected the Commonwealth's characterization of the search of Lou's Pharmacy as administrative. The court relied on the reasoning of *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), which set forth the characteristics of an administrative search which would validly circumvent the warrant requirement. Our supreme court noted that:

> [T]he *Burger* Court was concerned with routine investigation conducted for the purpose of ascertaining compliance with the regulations, which also uncovers evidence suggesting criminal behavior.
>
> In the case at bar, the narcotics agents' only purpose in searching Slaton's pharmacy was to investigate alleged activity. This was true even when the first search was conducted. *The agents never claimed to have any administrative purpose but instead, declared at the outset that their desire was to gather additional information for an ongoing criminal investigation whose subject at that time was someone other than Slaton. The search, therefore, was not an administrative inspection conducted as the Burger case requires, on a regular basis, but a discretionary act by officials who were involved in an ongoing criminal investigation.* Since it was never claimed that the searches were administrative, the question of the parameters of an administrative search is no relevant here. The traditional Fourth Amendment warrant requirements for a valid search, therefore, apply in this case.

*Slaton*, 608 A.2d at 8 (emphasis added).

■ Similarly, in the present case, the record indicates that the officers used their authority under § 6308(c) as a pretext to gather evidence of criminal activity. From the beginning, the officers stated that their purpose for inspecting Bob's Auto Body was to follow up on reports of suspected criminal activity occurring there. In fact, Sgt. Provins testified that "I was there for the purpose of checking information that we received that [appellant's] business had been involved in dealing hot auto parts." N.T. 1/13/97 p. 4. Moreover, the record does not reveal that the inspection of Bob's Auto Body was part of the routine enforcement of the regulatory scheme. Accordingly, we find that 75 Pa.C.S.A. § 6308(c) is inapplicable because the December 1, 1995 search was not a routine inspection, and, therefore, the general Fourth Amendment warrant requirements apply. *See Slaton, supra* (where officers intend to conduct a search for evidence, they must either obtain a warrant or assert an exception to the warrant requirement).

■ We note that the discovery of evidence of crimes in the course of enforcing "an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect." *Petroll*, 696 A.2d at 833 (quoting *Burger*, 482 U.S. at 716, 107 S.Ct. at 2651). However, in the present case, the officers did not discover evidence of a crime *during the course of conducting a routine administrative inspection.* In fact, from the outset, the officers' intent was to conduct an investigation of alleged criminal activity at Bob's Auto Body, rather than to enforce an administrative scheme.[3]

Thus, we find that the officers were required to obtain a warrant before searching Bob's Auto Body unless some other exception to the warrant requirement applied. Since the officers were not exempt from the warrant requirement and no warrant was obtained, we find that the search was illegal, and that all evidence seized as a result of the search should have been suppressed. *See Commonwealth v. Smith*, 454 Pa.Super. 489,

---

3. In its brief, the Commonwealth cites *Commonwealth v. Runkle*, 287 Pa.Super. 422, 430 A.2d 676 (1981), for the proposition that an administrative inspection is not rendered invalid because it was initiated by an anonymous tip. In *Runkle, supra*, an agent from the Pennsylvania Liquor Control Board conducted an inspection of a private club liquor licensee's premises after receiving an anonymous tip that gambling was occurring there. The agent was authorized to conduct the warrantless search under the Pennsylvania Liquor Code, which makes it unlawful for any licensee to refuse to allow an agent the right to inspect the premises.

To the extent that the holdings in *Runkle* and *Slaton* conflict, we note the decision in *Runkle* predates the decisions of our supreme court in *Slaton* and the U.S. Supreme Court in *Burger*, and, therefore, we have followed the analysis set forth in the more recent pronouncements of our supreme court and the U.S. Supreme Court.

685 A.2d 1030 (1996), *allocatur denied*, 548 Pa. 647, 695 A.2d 785 (1997) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)) ("Where evidence is obtained subsequent to an illegal search, such evidence will be held inadmissible unless it is sufficiently distinguishable from the original illegality.").[4] Accordingly, we reverse the decision of the court below, vacate the judgment of sentence and remand for a new trial.

Judgment of sentence is reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

---

**4.** Because we find that the officers' search of Bob's Auto Body was illegal, there is no need to determine the constitutionality of 75 Pa.C.S.A. § 6308(c). *See Cheek v. U.S.*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (where possible, the court interprets legislation so as to avoid raising constitutional questions); *Commonwealth v. Torres*, 429 Pa.Super. 228, 632 A.2d 319 (1993), *allocatur denied sub nom. Commonwealth v. Cruz*, 537 Pa. 658, 644 A.2d 1196 (1994) (where determination of the constitutionality of a statute is not dispositive of a case, this court will not address the issue).