COMMONWEALTH of Pennsylvania, Appellee,

v.

Omar K. BENNETT, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 12, 2003.
Filed May 30, 2003.

Edward J. Bilik, Greensburg, for appellant.

Kyle M. Baxter, Asst. Dist. Atty., Greensburg, for Com., appellee.

BEFORE: MUSMANNO, LALLY–GREEN, and TAMILIA, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Omar K. Bennett, appeals from the judgment of sentence entered by the Court of Common Pleas of Westmoreland County on January 25, 2002. We affirm.

¶ 2 The trial court stated the facts as follows:

On the evening of December 22, 1999, the Pennsylvania State Police Bureau of Liquor Control Enforcement (LCE) decided to conduct routine administrative inspections in Westmoreland County as part of a detail known as the Bar None Program. The Bar None Program is a multi-agency operation that involved the LCE, the Pennsylvania State Police, the Westmoreland County Sheriff's Department, and the Adult Probation and Parole Office in the enforcement of the laws under Pennsylvania's Liquor Code. 47 Pa.C.S.[P.S.] § 1–101, *et seq.* The purpose of the program is to inspect premises which operate under a liquor license to determine whether they are in compliance with the rules and regulations set forth in the Liquor Code. See 47 Pa.C.S.[P.S.] § 2–211, "Enforcement," and 47 Pa.C.S.[P.S.] § 5–513, "Premises and records subject to inspection."

On the evening in question, deputies from the Westmoreland County Sheriff's Department were called upon by the Pennsylvania State Police to participate in an inspection of an establishment known as Deno's Bar in the City of Jeannette. Sheriff's Deputy Steven M. Felder was one of the deputies who participated. Deputy Felder had received Act 120 training. See 53 Pa.C.S. § 2162 *et seq.* Although one of his duties was to look for individuals who may be on the Sheriff's outstanding warrant list, another function he was to serve, along with the other uniformed officers, was to investigate whether minors were being served alcoholic beverages in violation of 18 Pa.C.S. §§ 6307, 6308, 6309, and/or 6310.1.

When they arrived at Deno's, officers were stationed at the front and back doors, while LCE agents inspected behind the bar. LCE agents and the state police instructed patrons who were inside the bar to sit down and remain seated until everyone's identification cards were checked.

Deputy Felder and another sheriff's deputy, Deputy Phillips, were positioned about fifteen feet away from the rear exit, in the parking lot area of the building. While standing there, Deputy Felder heard a voice inside the bar, yelling, "[G]et out, get out, the police are coming in." A few seconds later, the rear door of the bar swung open, and the Defendant walked out holding an open beer bottle in his hand. As he walked toward the deputies, he took a drink from the bottle. Deputy Felder testified that he had two concerns upon viewing the Defendant engaged in this activity. First, he knew that the City of Jeannette had an ordinance which prohibited individuals from consuming alcohol from open containers in public places. Second, he was not able to immediately determine upon observation alone whether the Defendant was over the age of twenty-one years.

The officers identified themselves as deputy sheriffs, and asked the Defendant for identification for the purpose of determining whether he was over the age of twenty-one. The Defendant did not respond, but continued to walk toward Deputy Felder. Again, the deputy identified himself and asked to see the Defendant's identification. The Defendant did not respond a second time, but pushed Deputy Felder in the chest and

attempted to leave. Deputy Felder told him that he was under arrest and a struggle ensued. After some scuffling, the deputies, with the help of other officers, succeeded in getting the Defendant to the ground and handcuffing him. The Defendant was advised several times while the officers were attempting to place handcuffs on him that he was under arrest, yet he refused to cooperate. When he was finally shackled, Deputy Felder conducted a patdown search. The search yielded a significant sum of cash (over $22,000) and two plastic baggies containing cocaine.

As a consequence of the foregoing events, the Defendant stands charged with Possession With Intent to Deliver Controlled Substance, in violation of 35 Pa.C.S.[P.S.] § 780–113(a)(30), Possession of Controlled Substance, in violation of 35 Pa.C.S.[P.S.] 780–113(a)(16), and Resisting Arrest or Other Law Enforcement, in violation of 18 Pa.C.S. § 5104.

Trial Court Opinion, 3/26/01, at 1–4.

¶ 3 By order dated October 6, 2000, Appellant's Omnibus Pretrial Motion to suppress evidence was denied. Following a bench trial on November 2, 2001, Appellant was found guilty of Possession and Possession with Intent to Deliver a Controlled Substance,[1] and was sentenced to incarceration of three (3) to six (6) years. Appellant filed Post–Sentence Motions contesting the adverse ruling by the Suppression Court and arguing that the verdict was against the weight of the evidence. Post-sentence motions were denied and Appellant timely appealed the decision.

¶ 4 Appellant raises two issues on appeal:

I. Whether the Suppression Court erred in denying Appellant's Omnibus Pretrial motion to Suppress Evidence and permitting the evidence seized from Appellant to be admitted at trial.

  A. Deputy Felder had no authority to stop Appellant and demand identification

    a. Deputy Felder is not a member of the LCE and was not given any specific authority by statute or by the LCE to participate in the enforcement of Pennsylvania's liquor laws on the evening of this incident.

    b. Felder had no reasonable suspicion to believe that Appellant might be underage and, thus, was not justified in stopping Appellant to ask for identification.

  B. The stop and detention of Appellant was illegal in that Appellant did not have reasonable suspicion to believe that appellant had violated the City's Open container ordinance.

  C. The commonwealth failed to prove that Deputy Felder was authorized, under the City of Jeannette's ordinance, to arrest individuals for summary violations.

  D. Felder's testimony that Appellant pushed him in a "bump and run" is not credible. In fact, it was a pretext for the detention, arrest and search of Appellant, when Deputy Felder told investigating officers that appellant was "attempting to escape" through the back door and he "moved to block Appellant's path."

---

**1.** Count # 3, Resisting Arrest, was *nolle prossed* upon motion of the Assistant District Attorney, and Count # 2, Possession, merged into Count # 1, Possession with Intent to deliver for sentencing purposes.

II. Whether the trial court abused its discretion in denying Appellant's Post–Sentence Motions. Specifically, the verdict was against the weight of the evidence in that the Commonwealth failed to prove the chain of custody regarding the cocaine allegedly seized from Appellant's person.

Appellant's Brief at 6.

■■■ ¶ 5 When reviewing an order denying a motion to suppress evidence, we are limited to determining whether the evidence of record supports the factual findings, inferences and legal conclusions of the suppression court. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995). In so doing, we consider only the evidence of the prosecution's witness along with defense evidence that, fairly read in the context of the entire record, remains uncontradicted. *Id.* Furthermore, questions of credibility and the weight to be accorded to witness testimony are issues within the sound discretion of the trial court. *Id.* If the record supports the factual findings of the trial court, we may reverse only for an error of law. *Id.*

¶ 6 With respect to his first issue, Appellant argues, in general, that the initial stop by Deputy Felder was improper and did not provide a legitimate basis for an arrest. While Appellant acknowledges that the trial court found a lawful arrest based on the fact that Appellant shoved Deputy Felder, he insists that the alleged "bump and run" never occurred. Rather, Appellant asserts that the deputies initiated physical contact and the subsequent allegation that Appellant shoved Deputy Feld-

er is a pretext to justify an otherwise unlawful arrest. Appellant's Brief at 15. We will address Appellant's argument by focusing, first, on the initial interaction between Deputy Felder and Appellant and, second, on the subsequent arrest.

¶ 7 Appellant challenges the validity of the initial stop by asserting that Deputy Felder is not a member of the LCE and, thus, lacks specific authority to enforce Commonwealth liquor laws as part of administrative inspections by the LCE. Appellant relies on *Commonwealth v. Black*, 365 Pa.Super. 502, 530 A.2d 423 (1987) to support the proposition that, pursuant to 47 P.S. §§ 2–211 and 5–513, only members of the LCE and those duly authorized to assist the agency may participate in LCE administrative inspections.[2] Appellant's Brief at 21–23.

¶ 8 In *Black*, a municipal police officer made a warrantless entry into a private club as part of a joint investigation by police and the Pennsylvania Liquor Control Board (PLCB). *Id.* at 425. During the inspection, the officer entered the manager's private office. *Id.* After noticing marijuana, cocaine, and methamphetamine on the desk, the officer departed and later returned with a search warrant. *Id.* The manager of the establishment tried unsuccessfully to have the evidence suppressed and was subsequently convicted of offenses under the Controlled Substance, Drug, Device and Cosmetic Act.[3] *Id.* at 425.

¶ 9 On appeal, this Court noted that Pennsylvania's Liquor Code, 47 P.S. §§ 1–101 to 10–1001, establishes a framework in which specified individuals are given statutory authority to conduct warrantless

---

2. The decision in *Black* deals with an administrative inspection by the Pennsylvania Liquor Control Board (PLCB) conducted in 1984. In 1987, the legislature amended the Liquor Code and transferred enforcement powers previously possessed by the PLCB to a specially created arm of the Pennsylvania State Police known as the Bureau of Liquor Control Enforcement, the LCE.

3. 35 Pa.S.A. §§ 780–101 to 144.

searches and inspections of liquor establishments licensed pursuant to the liquor code. *Black*, 530 A.2d at 429–430. Furthermore, the right of warrantless inspections is limited to "...enforcement officers, investigators, members of the board, and persons duly authorized by the board." *Id.* at 430. Since the officer in question was not a PLCB enforcement officer or otherwise authorized to act on the agency's behalf, he had no authority under the Liquor Code to make a warrantless search of a private club. *Id.* at 430.

¶ 10 Appellant's case is similar to *Black* in two respects. First, the officer in *Black*, much like Deputy Felder in the Bar None Program, was investigating local liquor establishments for underage drinking in conjunction with an administrative inspection by the liquor control authorities. Additionally, the officer in *Black*, like Deputy Felder, was not a member of the PLCB and was not duly authorized to conduct an administrative search of Deno's Tavern. Under *Black*, a person is "duly authorized" for purposes of participating in PLCB inspections if there is written documentation or approval from a Board supervisor and the individual authorized to act is under direct supervision of Board members. *Black*, 530 A.2d at 430.

¶ 11 *Black*, however, does not control Appellant's case. The *Black* Court held that the Liquor Code did not furnish the authority for an officer to conduct a warrantless search of a private club. Since the statute did not authorize a warrantless search and the officer had no other authority (statutory or otherwise) for his actions, the search was illegal. *Black*, 530 A.2d at 430. The Court did not hold that all actions taken by officers during joint investigations with the liquor control authorities are illegal. *Id.*

¶ 12 Sheriffs in Pennsylvania have statutory and non-statutory sources of authority. Sheriffs are charged with serving process and executing orders directed to the officer pursuant to law. 42 Pa.C.S.A. § 2921. Such statutory authority includes the sheriff's traditional, common law function of upholding the peace and enforcing the laws of the Commonwealth. *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299, 303 (1994). Moreover, sheriffs have the authority to make warrantless arrests for breaches of the peace occurring in their presence, provided that they have proper training. *Com., Dept. of Transp., Bureau of Driver Licensing v. Kline*, 559 Pa. 646, 741 A.2d 1281, 1283 (1999); *Leet*, 641 A.2d at 303. Proper training can be conducted pursuant to the Municipal Police Training and Education Act,[4] commonly referred to as "Act 120" training, or other comparable training. *Kline*, 741 A.2d at 1285.

¶ 13 In Appellant's case, the trial court reviewed 47 P.S. § 2–211 and found that Deputy Felder did not have specific statutory authorization to conduct warrantless inspections of liquor establishments as part of the LCE inspection. Trial–Court Opinion, 10/6/00, at 6. Nonetheless, the trial court found authority for the stop under the sheriff's common law right to stop, detain, investigate and arrest for breaches of the peace occurring in his presence.[5] *Id.* at 4–7.

---

4. 53 Pa.C.S.A. § 2161, *et. seq.*

5. As we will discuss later, the trial court found that Appellant committed the crime of harassment by pushing Deputy Felder and based its discussion of the Deputy's authority on the facts surrounding the alleged push. While we agree with the trial court's findings, we analyze the question in terms of the Deputy's authority to accompany LCE officials and investigate for potential underage drinking.

¶ 14 A review of the record reveals that Deputy Felder is not a member of the LCE. Suppression Hearing, 8/22/00, at 23. Moreover, he did not have any specific written authorization to participate in the LCE inspection. Suppression Hearing, 7/6/00, at 15. Thus, we agree that Deputy Felder was not authorized to act pursuant to the statute.

¶ 15 Deputy Felder was, however, acting pursuant to his common law power to uphold the law. According to Sergeant Dorundo, the Bar None Program is a multi-disciplinary operation involving a number of organizations. *Id.* at 6. Each participant was responsible only for traditional duties normally associated with his or her agency and position. *Id.* at 8. The Sheriff's Office had no responsibilities with respect to the warrantless inspection of Deno's, as this duty was reserved for LCE personnel. *Id.* Deputy Felder's functions during the inspection were to check for patrons with outstanding warrants and investigate for underage drinking. Suppression Hearing, 8/23/00, at 23, 28. At the time of the incident, Deputy Felder was outside of the bar, in the back parking lot, and stopped Appellant out of a concern that Appellant had engaged in underage drinking and had violated the city's Open Container Ordinance. *Id.* at 30–32. These are valid law enforcement activities falling within the common law power of the sheriff to uphold peace and preserve the laws of the Commonwealth. *Leet,* 641 A.2d at 303. Consequently, Deputy Felder had the necessary authority to stop Appellant to investigate for violations of the applicable laws.

¶ 16 Appellant next claims that Deputy Felder lacked adequate suspicion to stop Appellant for underage drinking. Specifically, Appellant asserts that since Deputy Felder could not see Appellant's face clearly and, instead, presumed Appellant was underage based on the circumstances, the resulting encounter amounted to an unlawful detention.

¶ 17 There are three levels of interaction between officers and citizens, each requiring a different level of suspicion to validate the encounter. *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1047 (1995). The least restrictive level of interaction between a citizen and an officer is a "mere encounter" or request for information by an officer. *Id.* at 1047. The mere encounter does not have to be supported by any level of suspicion and carries with it no requirement that citizens either stop or respond. *Id.* A more restrictive stop, known as an "investigative detention" subjects a person to a stop and a period of detention. *Id.* In order to justify the restraint on liberty imposed by this type of encounter, the investigating officer must have a reasonable belief that the person detained has been involved in criminal activity. *Id.* Finally, the third level of encounter is an arrest or "custodial detention," which must be supported by probable cause that an offense has been or is being committed. *Id.*

¶ 18 To establish grounds for "reasonable suspicion" sufficient to justify an investigative detention, the officer must articulate specific observations which, in conjunction with reasonable inference derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 676 (1999). Mere hunches on the part of the officer are insufficient to meet this burden; however, "...a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Id.*

¶ 19 There is no clear formula for determining whether an interaction constitutes a mere encounter or an investigative detention, but we are guided by the question of whether a reasonable person, based on the totality of the circumstances, would believe he is free to leave. *Commonwealth v. Reid,* 571 Pa. 1, 811 A.2d 530, 545 (2002). Factors to consider when making this determination include the nature, length and location of the detention; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *Commonwealth. v. Turner,* 772 A.2d 970, 973 (Pa.Super.2001) (*en banc*).

¶ 20 In Appellant's case, the trial court did not characterize the initial encounter between Deputy Felder and Appellant as a mere encounter or an investigative detention supported by reasonable suspicion.[6] Thus, we review the record. The encounter took place at night in a dimly lit parking lot. Suppression Hearing, 8/22/00, at 54. Appellant was observed exiting Deno's Tavern via the back door while drinking from a bottle. *Id.* at 30. Two uniformed deputies approached Appellant, identified themselves as law enforcement personnel, and twice ordered Appellant to produce identification. *Id.* at 33. Deputy Felder admitted he did not speak in a non-threatening way but, instead, yelled at Appellant when requesting to see his identification. *Id.* at 48. Additionally, there is no testimony that the

Detective warned Appellant that he was free to disregard the encounter. These circumstances suggest that the deputies intended to assert official authority over Appellant in order to detain him and determine his age. The record supports a conclusion that the stop was an investigative detention.

¶ 21 Next, we determine whether the investigative detention is supported by a reasonable articulate suspicion that a crime was afoot. The record reflects that Deputy Felder proceeded to the back door of Deno's Bar after observing a person run into the bar as the officers approached, ostensibly to warn other patrons of the impending search. Suppression Hearing, 8/22/00, at 28. Deputy Phillips testified that someone inside yelled that officers were coming in. *Id.* at 30. Following this shout, the deputies saw Appellant exit the bar while drinking from a bottle. *Id.* While the officers could not clearly determine Appellant's age, Deputy Felder testified that, in his experience, it is typical for underage drinkers to exit via the back door of a bar once they discover that law enforcement personnel are entering via the front door. *Id.* at 28–29.

¶ 22 The record supports a reasonable conclusion, based on these observations and Deputy Felder's experience with prior inspections, that Appellant was exiting the back door in an attempt to evade the officers for unlawful purposes. Therefore, Deputy Felder's initial stop of Appellant is supported in the record by a reasonable, articulate suspicion of underage drinking. Thus, Deputy Felder's initial stop to request identification of Appellant was a lawful stop.[7]

---

6. The trial court did not specifically address this issue; however, we note that Appellant raised the argument in his pretrial motion to suppress evidence and supporting brief. Additionally, testimony addressing the nature of the stop and reasonableness of Deputy Feld-

er's actions was elicited at the suppression hearing. Suppression Hearing, 8/22/00, at 31–33; 46–47. Consequently, the issue is not waived and is properly before us on appeal.

7. Because we find a lawful stop based on a reasonable suspicion of underage drinking,

¶ 23 Appellant next argues that Deputy Felder was not authorized to arrest for a summary violation of the Open Container Ordinance of the City of Jeannette [8] under Pa.R.Crim.P. 400 (formerly Rule 51).[9] While Appellant challenges the validity of the arrest for a summary offense, the trial court viewed the arrest as an arrest for the crime of harassment. Harassment is defined in 18 Pa.C.S.A. § 2709, which provides in part:

> (a) **Harassment.**—A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
>   (1) strikes, shoves, kicks or otherwise subjects another person to physical contact, or attempts or threatens to do the same;
>
>   (2) follows the other person in or about a public place or places; or
>
>   (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose.

18 Pa.C.S.A. § 2709(a).

¶ 24 The trial court reasoned that, under a sheriff's common law powers, Deputy Felder had the authority to arrest Appellant for the breach of peace, *i.e.,* Appellant's pushing of Deputy Felder in the chest. Trial Court Opinion, 10/6/00, at 7–8. Specifically, the court stated, "A breach of the peace having been committed in the deputy's presence, the deputy's arrest of the Defendant was justified." *Id.* at 8.

¶ 25 Our review of the record reveals the following. Deputy Felder testified that he has received Act 120 certification, which renders him properly trained to make warrantless arrests. N.T., 10/29–30/01, at 5. Deputy Felder also testified that Appellant purposefully shoved him following the deputy's request for identification. Suppression Hearing, 8/22/00, at 35. Deputy Phillips, who was present in the parking lot at the time the encounter occurred, corroborates this testimony. Suppression Hearing, 2/21/01, at 65. Deputy Felder further testified that he was not blocking Appellant's path and that Appellant had sufficient room to get by the officer without initiating physical contact. Suppression Hearing, 8/22/00, at 47.

Sheriffs may make warrantless arrests for breaches of the peace occurring in their presence, provided that the sheriffs are properly trained. *Kline,* 741 A.2d at 1283; *Leet,* 641 A.2d at 303. This power is circumscribed by the principle that police may not make a warrantless arrest of a citizen absent probable cause to believe that person has been involved in criminal activity. *Commonwealth v. Barnett,* 484 Pa. 211, 398 A.2d 1019, 1021 (1979). Furthermore, probable cause exists where the arresting officer at the time of the arrest has knowledge of facts and circumstances, "based upon reasonably trustworthy information, sufficient to warrant a person of reasonable caution in believing that the suspect has committed or is committing a crime." *Commonwealth v. Yerger,* 333 Pa.Super. 501, 482 A.2d 984, 987 (1984).

---

we need not address Appellant's argument that Deputy Felder lacked reasonable suspicion to stop for a violation of the Open Container Ordinance of the City of Jeannette.

8. The trial court did not discuss the Open Container violation issue; however, Appellant raised the argument in his pretrial motion to suppress evidence and supporting brief. Additionally, testimony regarding the alleged violation was heard at the suppression hearing. Suppression Hearing, 8/22/00, at 31–33. This issue is properly before us on appeal.

9. Rule 400, Means of Instituting Proceedings in Summary Cases, provides:

Criminal proceedings in summary cases shall be instituted either by:

(1) Issuing a citation

(2) Filing a citation

(3) Filing a complaint

(4) Arresting without a warrant when the arrest is specifically authorized by law.

Pa.R.Crim.P. 400.

Nonetheless, Appellant pushed Deputy Felder and spun around in what the Deputy characterized as a "let's go" type of confrontation.[10] *Id.* at 47. These facts support a finding that Appellant intended to harass, annoy, or alarm Deputy Felder by purposefully shoving him. As such, the facts are sufficient to give rise to the probable cause necessary to support the arrest for harassment. Appellant's claim that the arrest was unlawful is meritless.

¶ 26 Appellant's final argument that the "bump and run" was a pretext for an otherwise unlawful arrest. Appellant maintains that Deputy Felder initiated physical contact by grabbing him without warning as he exited the bar. Specifically, Appellant claims that Deputy Felder's alleged concerns about underage drinking, ordinance violations, and the "bump and run" were all manufactured excuses designed to justify the ultimate, and unlawful, search of Appellant.[11]

¶ 27 A pretextual arrest is an arrest made for the purpose of conducting a search without a warrant. In such cases, the search is invalid even if the arrest itself was lawful. *Commonwealth v. Lewis*, 394 Pa.Super. 403, 576 A.2d 63, 67 (1990). Nonetheless, the decision to arrest must be assessed in light of the circumstances confronting the officer at the time of the arrest. *Commonwealth v. Williams*, 390 Pa.Super. 493, 568 A.2d 1281, 1287 n. 6 (1990). If there is an objective basis for a finding of probable cause based on the facts available to the officer, an officer's uncommunicated sub-

jective intent to act illegally is irrelevant. *Id.* Rather, a defendant must show evidence that the arresting officer acted in bad faith. *Commonwealth v. Tenney*, 227 Pa.Super. 337, 324 A.2d 401, 402 (1974).

¶ 28 While the trial court did not specifically deal with the question of whether the arrest was a pretext, it nonetheless acknowledged that Appellant disputed Deputy Felder's account of events surrounding the shove. Trial Court Opinion, 10/6/00 at 7–8. The trial court found Deputy Felder to be credible, noting that, "given the uncontradicted testimony presented on this point, we conclude as a finding of fact that the defendant pushed Deputy Felder...." *Id.* at 8.

¶ 29 The record reveals that Deputy Felder observed Appellant exiting the bar door of Deno's while drinking from a bottle. Suppression Hearing, 8/22/00, at 31. Deputy Felder twice instructed Appellant to produce identification, but Appellant disregarded Deputy Felder's order and pushed Deputy Felder in an alleged "bump and run." *Id.* at 35.

¶ 30 The record supports a conclusion that Deputy Felder was engaged in legitimate law enforcement objectives and was acting in a manner that was consistent with procedures followed at all of the other inspections made that evening. Deputy Felder gave no indication of an intention to arrest or search Appellant prior to Appellant's "bump and run." Rather, Deputy Felder was concerned primarily with underage drinking and a possible open con-

---

10. Appellant denies Deputy Felder's account of the events and asserts that the Deputy grabbed him immediately and without warning as Appellant exited the building. Appellant, however, presents no eyewitness testimony to support this.

11. Appellant also asserts in general that the inspection was, in reality, an unlawful drug raid under the guise of a lawful administrative inspection. We note that there is nothing in the record to substantiate this claim. The LCE and law enforcement personnel made several administrative inspections that evening. Deno's was, in fact, inspected and citations were issued.

tainer ordinance, as opposed to searching for narcotics. Deputy Felder gave Appellant two opportunities to resolve the situation without arrest, but instead, Appellant shoved the deputy. The arrest was not made until after this act and there is nothing to indicate the arrest was for the sole purpose of searching Appellant. The record fails to suggest any bad faith on the part of Deputy Felder. Accordingly, the record reflects no pretext. Since the search was incident to a lawful arrest, the trial court did not err or abuse its discretion when it denied Appellant's suppression motion.[12]

¶ 31 Appellant next argues that a new trial is warranted because the verdict is not supported by the weight of the evidence. Appellant asserts that the Commonwealth failed to prove the chain of evidence regarding the alleged cocaine seized during the search of Appellant. Specifically, Appellant claims that the testimony with respect to the number and size of bags of cocaine allegedly seized and the manner of packaging was inconsistent. Thus, Appellant argues, this testimony fails to provide a reasonable inference that the drugs had not been tampered with prior to trial.

¶ 32 A motion for new trial on grounds that "the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Hodge*, 441 Pa.Super. 653, 658 A.2d 386, 388 (1995). A new trial will not be ordered because of conflicting testimony, but is awarded only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994).

¶ 33 It is well settled that the Commonwealth "does not have to establish the sanctity of its exhibits beyond a moral certainty." *Commonwealth v. Miller*, 247 Pa.Super. 132, 371 A.2d 1362, 1365 (1977). Rather, it is only necessary that the Commonwealth establish a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court. *Id.*

¶ 34 The trial court addressed Appellant's weight of the evidence question and concluded that the chain of custody was sufficiently established. Trial Court Opinion, 3/18/02 at 7. The trial court specifically noted that, "[a]ny inconsistencies in testimony and any potential problems pointed out by the Defendant were considered by the Court prior to the Court admitting the evidence at trial." *Id.* Consequently, Appellant's Post Sentence Motions were denied.

¶ 35 Our review of the record reveals that Deputy Felder testified that he recovered three plastic bags of suspected cocaine from Appellant. N.T., 10/29–30/01, at 27. He placed these bags in a brown paper bag and gave them to Corporal Zona. N.T., 10/29–30/01, at 27. Corporal Zona testified that he was not present at the scene during the entire time that Deputy Felder bagged the evidence, but he nonetheless took control of the bags from Deputy Felder and locked them in the front of the police car. N.T., 10/29–30/01, at 151, 155. Corporal Zona then took the evidence to the police barracks, where Trooper Scott retrieved the three bags of alleged cocaine. N.T., 10/29–30/01, at 155.

¶ 36 The record further reveals that Trooper Scott testified that, after field

---

12. Appellant challenges only the validity of the arrest. He does not argue that the search is unlawful. We note that a search incident to a lawful arrest is an exception to the warrant requirement. *Commonwealth v. Ingram*, 814 A.2d 264, 272 (Pa.Super.2002).

testing the evidence, he marked the evidence and placed it in an evidence envelope, which was secured in the evidence room at the Greensburg State Police barracks. N.T., 10/29–30/01, at 233. Trooper Scott further testified that he and Sergeant Oblinski later retrieved the evidence from the storage area and transported it to the crime lab on December 28, 1999. N.T., 10/29–30/01, at 234. The crime lab received the sealed evidence envelope on December 28, 1999 and retrieved three bags of what was later found to be cocaine. N.T., 10/29–30/01, at 208–209. After testing, the cocaine was secured in an evidence locker until Trooper Scott picked it up on February 16, 2000.[13] N.T., 10/29–30/01, at 207. The evidence was transported back to the State Police barracks in Greensburg and remained in the evidence room until it was signed out on October 28, 2001 for presentation at trial. N.T., 10/29–30/01, at 234.

¶ 37 Viewing this evidence in the light most favorable to the Commonwealth, we cannot say that the trial court erred or abused its discretion when it concluded that the Commonwealth sufficiently established the chain of custody. The trial court heard all of the testimony and, as finder of fact, chose to give deference to the Commonwealth's version of events. As Appellant's challenge goes to the weight of the evidence, he necessarily concedes that the evidence is sufficient to sustain the verdict and nothing in the record leads us to believe that the verdict shocks one's sense of justice. Thus, we will not disturb the trial court's findings.

¶ 38 Judgment of sentence affirmed.

---

**13.** We also note that the record reveals that the evidence envelope was initially mislabeled. N.T., 10/29–30/01, at 235. Trooper Scott testified he corrected the mistake on the evidence envelope before sending it to the forensics lab. N.T., 10/29–30/01, at 235.