J-A28011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES T. MARSH | |
| Appellant | No. 1689 EDA 2014 |

Appeal from the Judgment of Sentence May 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-MD-0000229-2014

BEFORE: GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 13, 2015**

Appellant, James T. Marsh, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his conviction for the summary offense of criminal contempt.[1] We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> WAS THE FINDING OF CRIMINAL CONTEMPT FOR VIOLATION OF 42 PA.C.S.A. 4132(1), (2), (3) NOT SUPPORTED BY SUFFICIENT EVIDENCE SINCE THE EVIDENCE DID NOT SUPPORT A FINDING THAT [APPELLANT] KNEW OR ACTED INTENTIONALLY OR

---

[1] 42 Pa.C.S.A. § 4132.

WILLFULLY THAT HIS CLIENT WAS NOT ENTITLED TO WEAR HIS MARINE MILITARY UNIFORM DURING HIS CRIMINAL TRIAL? WAS THE CONTEMPT FINDING NOT SUPPORTED BY THE EVIDENCE SINCE [APPELLANT] WAS THE VICTIM OF HIS CLIENT'S MISREPRESENTATION AND DECEIT? WAS THE EVIDENCE INSUFFICIENT TO SHOW [APPELLANT] HAD ANY INTENT TO OBSTRUCT JUSTICE, ANY INTENT TO DELAY THE TRIAL, ANY INTENT TO CREATE A MISTRIAL, ANY INTENT TO MISBEHAVE IN THE PRESENCE OF THE COURT, ANY INTENT TO VIOLATE A COURT ORDER, AND ANY INTENT TO ACT IN A DISOBEDIENT FASHION IN OPEN COURT? WAS THE FINDING OF CONTEMPT AN ABUSE OF DISCRETION? DID THE EVIDENCE DEMONSTRATE NO WILLFUL OR INTENTIONAL CONDUCT BY [APPELLANT]?

WAS THE FINDING OF CRIMINAL CONTEMPT FOR VIOLATION OF 42 PA.C.S.A. 4132(1), (2), (3) AGAINST THE WEIGHT OF THE EVIDENCE? SHOULD THE FINDING OF CONTEMPT SHOCK THE CONSCIENCE OF THE COURT? WAS THE FINDING OF CONTEMPT AN ABUSE OF DISCRETION?

(Appellant's Brief at 5-6).

A court's power to impose a summary punishment for contempt is set forth in Section 4132 as follows:

**§ 4132. Attachment and summary punishment for contempts**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors, or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Genece E. Brinkley, we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed November 5, 2014, at 10-16) (finding: **(1)** Appellant knew or should have known his misrepresentations would obstruct administration of justice by causing panel of selected jurors to be discharged; court asked Appellant multiple times to define the military status of his client ("Mr. Kennedy") and each time Appellant unequivocally answered that Mr. Kennedy was on active duty; Appellant also repeatedly assured court that he could provide court with Mr. Kennedy's active duty papers; Appellant's insistence and certainty regarding Mr. Kennedy's military status persuaded court to allow Mr. Kennedy to wear his military uniform during jury selection; Appellant knew or should have known his insistence would influence court's actions; Appellant also knew his misrepresentations would significantly disrupt court proceedings because court warned Appellant that it would have to discharge jury if Appellant was wrong about Mr. Kennedy's military status; despite warnings from court, Appellant continued to misrepresent Mr. Kennedy's military status causing

significant waste of court's resources and delaying commencement of Mr. Kennedy's trial; therefore, evidence was sufficient to sustain contempt convictions; **(2)** Appellant repeatedly assured court that Mr. Kennedy was on active duty with the military despite Appellant's uncertainty as to truth of statements; Appellant continued to make these representations to court even after court warned Appellant of consequences if Appellant's assertions were inaccurate; notwithstanding Appellant's assurances to court that Mr. Kennedy was on active duty, Mr. Kennedy testified at contempt hearing that he and Appellant never discussed Mr. Kennedy's military status or whether Mr. Kennedy should wear his uniform to court; Appellant testified at contempt hearing that he was indifferent to Mr. Kennedy wearing his uniform to court, and Appellant did not understand true meaning of active duty; court did not believe testimony that Appellant and Mr. Kennedy never discussed Appellant's military status or Mr. Kennedy wearing uniform, and court found Appellant's testimony to be patently incredible; instead, court determined Appellant made misrepresentations about Mr. Kennedy's military status to incur benefit for Mr. Kennedy from appearing in court in military uniform; court concluded Appellant's actions recklessly or intentionally misled court; thus, contempt finding did not shock one's sense of justice and Appellant's challenge to weight of evidence fails). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/13/2015</u>

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

COMMONWEALTH                  :                  MC-51-MD-0000229-2014

                                              **FILED**

                              :

MC-51-MD-0000229-2014 Comm. v. Marsh, James T.          **NOV 0 5 2014**
                Opinion

vs.

|||| ||||| |||||| ||| |||| |||          **Criminal Appeals Unit
                                          First Judicial District of PA**
        7219724841

JAMES MARSH                   :                  **SUPERIOR COURT
                                                  1689 EDA 2014**


BRINKLEY, J.                                      NOVEMBER 5, 2014

## OPINION

Defendant James Marsh appeared before this Court for a contempt hearing on March 20, 2014. This Court found Defendant in contempt and ordered him to pay a $500 fine. Defendant appealed this sentence to Superior Court and raised the following issues on appeal: (1) whether there was sufficient evidence to find Defendant in contempt; and (2) whether the finding of contempt was against the weight of the evidence.

## PROCEDURAL HISTORY AND FACTS

On September 19, 2011, Defendant Marsh appeared before this Court representing his client, Chal Kennedy, Jr. ("Kennedy"), at a status listing for an upcoming trial. At the hearing, Kennedy wore a Blue Dress "D" Uniform from the United States Marine Corps. The Commonwealth objected to Kennedy wearing the uniform, and Defendant Marsh was instructed that he would have to provide authorization from the armed forces if Kennedy wished to appear in court again wearing his uniform. On October 15, 2013, the day scheduled for jury selection in

1

Kennedy's trial, Kennedy again wore the uniform to court and the Commonwealth again objected to it. This Court reminded Defendant Marsh that he was supposed to provide the Court with permission for Kennedy to be dressed in uniform, and Defendant Marsh stated, "I can get that, Your Honor...I can have that for you right after lunch." (N.T. 10/15/2013 p. 5)

After Kennedy and his co-defendant were colloquied regarding any offers made by the Commonwealth and whether they wished to proceed with trial, Defendant Marsh stated that he had sent a text message to Kennedy's supervisor, Staff Sergeant Brad Jackson ("Jackson") and Jackson replied, "He should have worn his Charlies or Alphas, but these are Deltas, but I don't know of any regulations that said he can't. He has been working with me and that's the uniform." Id. at 20. This Court then reiterated to Defendant Marsh that he needed to show the Court the official regulations in writing which stated that Kennedy was allowed to wear the military uniform while on trial as a criminal defendant. Defendant Marsh assured the Court that he would provide appropriate documentation. After the Court returned from lunch, Defendant Marsh cited paragraph 2002 of the Marine Corps Uniform Regulations in support of Kennedy being able to wear the uniform. According to this paragraph, "Commanders may prescribe Blue Dress C [sic] as the uniform for the day for specified occasions or duties...this uniform is authorized for leave and liberty." Id. at 23-24. In addition, this Court received a fax from Jackson which read, "I'm writing this letter to give guidance in reference to Corporal Kennedy wearing his service uniform to court. There are no rules to my knowledge that say we cannot wear our service uniform while appearing for a court hearing." Id. at 25.

After the Commonwealth attorney, Nicole Pedicino, Esquire, stated that her co-workers who are reservists in the military would not wear their uniform in court because they are in the reserves, the following exchange took place:

2

| | |
|---|---|
| THE COURT: | Well, is [Kennedy] in the reserves? |
| MS. PEDICINO: | I have no idea. He's- |
| THE COURT: | What is his status? |
| DEFENDANT MARSH: | He's on liberty as of today. He would be working if he wasn't in here today, Your Honor. He's active duty. |
| THE COURT: | No, that doesn't answer my question. He's active duty? |
| DEFENDANT MARSH: | That's correct, Your Honor. |
| THE COURT: | He's not a reservist? |
| DEFENDANT MARSH: | He's not. |

Id. at 25-26. Defendant Marsh further stated that "[Kennedy has] never not been on active duty", and that "he could get [Kennedy's] orders that say [Kennedy] is active duty." Id. at 27. Shortly thereafter, in response to this Court's question whether Kennedy was still working in the Marines, Defendant Marsh stated, "That's correct, Your Honor...on active orders." Defendant Marsh further claimed, "We can get those orders if we take a recess, Your Honor." Id. at 29. After Ms. Pedicino expressed doubt that Kennedy would still be on active duty after being incarcerated for roughly a year and asked this Court whether the Marine Corps initiated a separation action against Kennedy during that time period, Defendant Marsh stated, "That was withdrawn that action against him...and he was put back in active duty." Id. at 29-30. Based on Defendant Marsh's repeated assurances, this Court stated that Kennedy could wear the uniform during jury selection. Id. at 39-40.

3

After this Court returned from a brief recess, Ms. Pedicino stated that her office had been in contact with Jackson. Ms. Pedicino stated that Jackson told her office that Kennedy was not on active duty, but was a reservist who had been working for Jackson for only three weeks. In response, Defendant Marsh asserted, "We can bring [Kennedy's] active orders as I suggested tomorrow to you." Id. at 41-42. After this Court stated it had allowed Kennedy to remain in his uniform "because I accepted it when you said that you knew he had active duty papers," Defendant Marsh again stated, "Okay, and I can do that tomorrow." Id. at 43. This Court then stated, "I'm concerned because I believe that there is some…sort of fraud on the Court because I've been very specific about what I required and I've been very specific about the reason that I required it." Id. This Court further stated, "See my concern is this: This panel has seen him in uniform. I've given them the cautionary instruction. I don't want to waste a day…and have to release this whole panel tomorrow because I'm sure that that's what the Commonwealth is going to ask to do…I don't want to waste time here. I don't want to waste this day. So where are the papers because they should have been brought anyway. I had asked about this last time." Id. at 45. Defendant Marsh then stated, "we'll bring the documents in tomorrow at 8:30", and assured the Court, "He'll have them." Id. at 50, 62. This Court asked Defendant Marsh if he would allow the Court to ask Kennedy directly whether he was on active duty, and Defendant Marsh stated, "Not when he's going to produce the documents as you requested per your order tomorrow." Id. at 63-64.

On October 16, 2013, the next day, Defendant Marsh failed to bring in any documentation showing that Kennedy was on active duty. Defendant Marsh stated that he was unable to do so because he had a personal matter to attend to the night before and did not have the time to obtain any documentation. (N.T. 10/16/2013 p. 4). This Court then stated that it

4

would have to discharge any jury members who had seen Kennedy in his uniform in order to cure the prejudice against the Commonwealth. Id. at 5. After a short recess, this Court read from a fax it received directly from Staff Sergeant Jackson. According to Jackson, "Corporal Kennedy has been **volunteering** (emphasis added) his support to my office...His assistance would set him up to **apply** (emphasis added) for active duty program known as EAD and also give him points towards his promotion. This program allows the reservist to become active duty recruiters...Corporal Kennedy from my knowledge at this time is a reservist who can be activated to be on active duty to help with the needs of the Marine Corps." Jackson further stated, "While working with Corporal Kennedy he asked my advice in regards to wearing his uniform to appear in court. When I answered the question, which was based on my experience in active duty, I told him we are. In the past I have worn my uniform for court in regards to traffic violations. I wasn't fully aware of Corporal Kennedy's charges he was facing when I presented the information to him." Id. at 13-14. Based upon this fax, this Court stated that the unequivocal representations Defendant Marsh had made to this Court that Kennedy was on active duty were incorrect. This Court further stated that, consequently, it would schedule a contempt hearing for Defendant Marsh after Kennedy's trial was complete. Id. at 14.

On March 20, 2014, this Court held a contempt hearing. The Commonwealth was represented at the hearing by Ms. Pedicino while Defendant Marsh was represented by Stephen Older, Esquire. The defense called Kennedy as its sole witness. Kennedy testified that he had appeared in court on October 15, 2013 in his dress blue Delta uniform. Kennedy stated that he had worn his uniform to court that day because he was told that he could wear it, and because he planned on going to work after he appeared in court that day. Kennedy testified that he volunteered at the Marine Corps Recruiting Center on Broad Street and Cecil B. Moore Avenue.

5

Kennedy testified that Defendant Marsh never told him to wear the uniform in court, nor did he ever discuss wearing the uniform in court with Defendant Marsh. Kennedy stated that he had never told Defendant Marsh that he was on active duty, but he did tell Defendant Marsh he was checking into a new unit sometime between October 17, 2013 to October 23, 2013. Kennedy stated that he told Defendant Marsh this on October 15, 2013, and he never had any discussions with Defendant Marsh regarding his status in the military prior to that date. Id. at 3-6, 14-15. This Court then asked Kennedy to clarify exactly what he meant when he stated that he would be checking into a new unit. Kennedy stated that he had received orders to begin active duty training as a reservist. Kennedy stated that he was not on active duty with the Marines on October 15, 2013 or October 16, 2013. Id. at 18-20.

Mr. Older argued that Defendant Marsh lacked the necessary intent to be held in contempt. Mr. Older stated that Defendant Marsh believed that Kennedy was on active duty based on conversations he had with Kennedy and Kennedy's stepfather. Mr. Older stated that it was only when Defendant Marsh received Kennedy's orders on the night of October 15, 2013, that he knew that Kennedy was not on active duty. Mr. Older stated that Defendant Marsh did not lie to this Court about Kennedy's status because he believed that Kennedy was active. Mr. Older argued that a lie required the declarant to know that the statement made was false, and Defendant Marsh had no knowledge or reason to believe that Kennedy was not on active duty. Id. at 23-26. Mr. Older further stated there was no evidence to show that Defendant Marsh had made a willful misrepresentation to this Court that he knew to be false because Defendant Marsh had reason to believe that Kennedy was on active duty. Id. at 34. Mr. Older further argued that Defendant Marsh would not have continued to assert that Kennedy was on active duty if he knew

6

that to be false and that he would be unable to produce any documentation showing that Kennedy was on active duty. Id. at 37-38.

Ms. Pedicino, on behalf of the Commonwealth, stated that Kennedy had been volunteering for the Marine Corps for only three weeks prior to October 15, 2013. Ms. Pedicino further stated that common sense would cause a reasonable person to question whether someone who had recently been in jail for ten months awaiting trial on multiple felony charges would be on active duty with the military. Ms. Pedicino argued that Defendant Marsh had an ethical obligation to speak the truth to this Court, and yet he continued to insist that Kennedy was on active duty even though he did not know that. Ms. Pedicino stated in candor to the Court that Defendant Marsh could have told the Court that he needed to confirm that Kennedy was on active duty prior to making any representations to the Court, but instead Defendant Marsh continually lied to the Court and stated that he knew Kennedy was on active duty. Id. at 44-46.

Defendant Marsh then spoke on his own behalf. Defendant Marsh stated that Kennedy was his only source of information and that he never made any other representations. Defendant Marsh stated that he was zealous in his representation of Kennedy, and both he and Kennedy's stepfather thought that Kennedy was on active duty. Defendant Marsh further stated that he did not know what active duty meant and that it was not his job to find out what it meant. Defendant Marsh stated that he did not want Kennedy to wear the uniform throughout the trial, and did not care if Kennedy wore the uniform. Defendant Marsh stated that he believed his client when Kennedy told him he was on active duty, and that he had an ethical duty to believe his client or withdraw from the case. Defendant Marsh claimed there was no benefit to Kennedy wearing his uniform during jury selection and he believed that Kennedy was allowed to wear it based on his

7

conversation with Jackson. Id. at 52-55. This Court then found Defendant Marsh in contempt and deferred sentencing. Id. at 59-60.

On May 27, 2014, this Court held a sentencing hearing for Defendant Marsh. Defendant Marsh was represented at sentencing by Samuel Stretton, Esquire, while the Commonwealth was represented by Ms. Pedicino. Mr. Stretton asked this Court to reconsider the contempt finding. Mr. Stretton argued that, because Defendant Marsh was never in the military, he did not understand the distinction between being a reservist and being on active duty. Mr. Stretton stated that Defendant Marsh believed that Kennedy was on active duty, and that he was allowed to wear his uniform if he was on active duty. (N.T. Sentencing 5/27/2014 p. 3, 8). Mr. Stretton stated that Defendant Marsh had a reasonable belief that Kennedy was allowed to wear the uniform, and he did not mislead this Court in any way. Mr. Stretton argued that contempt required either intentional misconduct or grossly reckless conduct, and that the mistake Defendant Marsh made did not rise to the level of either. Mr. Stretton claimed that Defendant Marsh did not intend to influence the jury by having Kennedy in his uniform, but merely believed it was permissible for Kennedy to be in uniform. Mr. Stretton stated that Defendant Marsh had a good reputation in Philadelphia and had always been respectful in court. Id. at 10-14.

Ms. Pedicino, on behalf of the Commonwealth, stated that whether Defendant Marsh had good character or reputation was no reason to reconsider the finding of contempt. Ms. Pedicino argued that this Court had conducted an extensive hearing on this matter, that it had been fully litigated, and that the evidence was clear that Defendant Marsh was guilty of contempt. Id. at 14.

This Court denied Defendant Marsh's motion for reconsideration. This Court stated that Kennedy previously had appeared in court and testified that he never misrepresented his military

8

status to Defendant Marsh. This Court further stated that Defendant Marsh continually insisted that Kennedy was on active duty, and that Defendant Marsh never told Jackson that Kennedy was standing trial for felony criminal charges. This Court noted that the Commonwealth had objected to Kennedy wearing his uniform at previous listings, and Defendant Marsh was told repeatedly that he needed to prove to the Court that Kennedy was allowed to wear the uniform. Id. at 14-21.

Mr. Stretton then asked this Court to impose a fine of one hundred dollars. Mr. Stretton argued that Defendant Marsh believed that Kennedy had a right to wear his military uniform and, although this belief proved wrong, it should not warrant Defendant Marsh having to pay for the costs of the courtroom. Mr. Stretton stated that a substantial fine or restitution would be financially burdensome to Defendant Marsh. In addition, Mr. Stretton stated that Defendant Marsh still would have to answer to the disciplinary board of the Pennsylvania Bar because he was found in contempt. Id. at 23-25.

Defendant Marsh then spoke on his own behalf. Defendant Marsh apologized for his actions and requested that this Court impose a fine of five hundred dollars. Defendant Marsh stated this matter had caused him to reconsider his behavior in court and that he would be more careful in the future as to what he represented to the court. Defendant Marsh stated that Kennedy still owed him approximately sixteen-thousand dollars on this case. Defendant Marsh further stated that he was a sole-practitioner and was responsible for all tasks in his office. Defendant Marsh stated he usually worked seven days a week and twelve hours a day. Defendant Marsh claimed that Kennedy came to him on October 15, 2013 in uniform. Defendant Marsh stated he asked Kennedy if he was active duty and Kennedy said he was. Defendant Marsh stated that by the time he realized that Kennedy was not active duty it was too late to correct his error.

9

Defendant Marsh stated that he now understood that he should tell the court if he was unsure of an answer and that he would do things differently in the future. This Court then imposed a fine of five hundred dollars. Id. at 26-29.

On June 3, 2014, Defendant Marsh filed a Notice of Appeal to Superior Court through counsel. On June 30, 2014, after receiving all the notes of testimony, this Court ordered defense counsel to file a Concise Statement of Errors pursuant to Pa.R.A.P. 1925(b), and defense counsel did so on July 16, 2014.

## ISSUES

I.  **WHETHER THERE WAS SUFFICIENT EVIDENCE TO FIND DEFENDANT IN CONTEMPT.**

II. **WHETHER THE FINDING OF CONTEMPT WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

## DISCUSSION

### I.  THE EVIDENCE WAS SUFFICIENT TO FIND DEFENDANT IN CONTEMPT.

The evidence presented at the contempt hearing was sufficient to find Defendant in contempt. A review of the sufficiency of the evidence to support a conviction requires that the evidence be reviewed in the light most favorable to the Commonwealth as verdict winner. Commonwealth v. Walter, 2004 PA Super. 147, 849 A.2d 265, 267 (2004) (citing Commonwealth v. Rose, 463 Pa. Super. 264, 344 A.2d 824, 825 (1975)). The Commonwealth is also entitled to all favorable inferences which may be drawn from the evidence. Commonwealth v. Sanchez, 2006 Pa. LEXIS 1833 (2006) (citing Commonwealth v. Collins, 550 Pa. 46, 50, 703 A.2d 418, 420 (1997)). The evidence put forth by the Commonwealth will be considered sufficient if it establishes each material element of the crime beyond a reasonable doubt, even if by wholly circumstantial evidence. Commonwealth v. Dargan, 2006 PA Super. 74, 897 A.2d

10

496, 503 (2006) (citing Commonwealth v. DiStefano, 2001 PA Super. 238, 782 A.2d 574, 582 (2001)).

When determining whether the evidence is sufficient to support a guilty verdict, the appellate court must examine the entire trial record and consider all of the evidence actually received. Id. However, the trier of fact is entitled to believe all, part or none of the evidence received at trial and the appellate court cannot substitute its judgment for that of the fact-finder. Commonwealth v. Frisbie, 2006 PA Super. 430, 889 A.2d 1271, 1274 (2006) (citing DiStefano, 782 A.2d at 574); Commonwealth v. Kim, 2005 PA Super. 383, 888 A.2d 847, 851 (2005) (citing Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). The facts and circumstances established by the Commonwealth need not eliminate any possibility of the defendant's innocence; rather, any doubt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact could be concluded. Commonwealth v. Lambert, 2002 PA Super. 82, 795 A.2d 1010 (2002) (citing Commonwealth v. Cassidy, 447 Pa. Super. 192, 194, 668 A.2d 1143, 1144 (1995)).

When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, the appellate court is confined to a determination of whether the facts support the trial court's decision. Commonwealth v. Debose, 2003 PA Super 316, 833 A.2d 147, 149 (2003) (citing Williams v. Williams, 452 Pa. Super. 52, 681 A.2d 181, 183 (1996)). To find direct criminal contempt there must be proof beyond a reasonable doubt of misconduct in the presence of the court, committed with the intent to obstruct justice, that obstructs the administration of justice. Stewart v. Foxworth, 2013 PA Super 91, 65 A.3d 468, 472 (2013) (citing Himes v. Himes, 833 A.2d 1124, 1125-26 (Pa.Super. 2003)). Conduct constitutes an obstruction of the administration of justice if it significantly disrupts the proceedings. Yoskowitz

11

v. Yazdanfar, 2006 PA Super 120, 900 A.2d 900, 904 (2006) (citing Commonwealth v. Martorano, 387 Pa.Super. 79, 563 A.2d 1193, 1197 (1989)). Wrongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful. Stewart, 65 A.3d at 472.

In the case at bar, Defendant Marsh knew or should have known that his misrepresentations to this Court would, and did indeed, obstruct the administration of justice by causing a panel of eight selected jurors to be discharged. Defendant Marsh was asked multiple times to define Kennedy's status with the military. He was asked specifically whether he was sure that Kennedy was on active duty. In each instance Defendant Marsh responded unequivocally that Kennedy was on active duty and assured this Court that he would be able to bring Kennedy's active duty papers to court the next day. Even after being warned by this Court that the jury would have to be discharged if these representations turned out to be false, Defendant Marsh persisted in unequivocally stating that Kennedy was on active duty. As this Court noted, Defendant Marsh's insistence and certitude in representing that Kennedy was on active duty persuaded this Court to allow Kennedy to wear his uniform during jury selection. At the contempt hearing, this Court stated, "I believed [Defendant Marsh]. I believed everything that he said. He was so insistent. He was so sure. He was so insistent that [Kennedy] was on active duty that I said, okay." (N.T. 3/20/2014 p. 51). Defendant Marsh deliberately misrepresented to this Court his client's status with the military. On the basis of his insistence and certainty in making these misrepresentations, this Court allowed Kennedy to wear his uniform during jury selection. Defendant Marsh knew or should have known that his insistence and certainty would influence this Court in deciding whether to allow Kennedy to wear his uniform. Furthermore, Defendant Marsh knew that his misrepresentations would significantly

12

disrupt the proceedings after this Court warned him that the jury would have to be discharged if Defendant Marsh was making false statements. Nevertheless, Defendant Marsh persisted in misrepresenting his knowledge about Kennedy's status with the military. This Court would have continued its reliance on Defendant Marsh's assurances if it had not conducted its own inquiry and asked for clarification from Staff Sergeant Jackson. As a result of Defendant Marsh's misrepresentations, all of the jury members who had seen Kennedy in his uniform had to be discharged, and the administration of justice was obstructed. This was a significant waste of the Court's resources and time, and delayed the commencement of Kennedy's trial. The evidence, therefore, was sufficient to find Defendant Marsh in contempt.

## II. THE FINDING OF CONTEMPT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.

The finding of contempt in this case was not against the weight of the evidence. Under Pennsylvania law, a weight of the evidence claim concedes that the evidence was sufficient to sustain the verdict. Commonwealth v. Smith, 2004 PA Super. 77, 853 A.2d 1020, 1028 (2004) (citing Commonwealth v. Bennett, 2003 PA Super. 212, 827 A.2d 469 (2003)). The weight of the evidence is "exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Rice, 2006 PA Super. 143, 902 A.2d 542, 546 (2006) (quoting Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). In addition, "where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, ... rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." Commonwealth v. Kim, 2005 PA Super. 383, 888 A.2d 847, 851 (2005) (quoting Champney, 832 A.2d at 408). An appellate court cannot substitute its judgment for that of the fact finder; therefore, a verdict will be reversed only

13

in the extraordinary situation where the verdict is "so contrary to the evidence as to shock one's sense of justice" and the award of a new trial is imperative so that right may be given another opportunity to prevail. Commonwealth v. Tharp, 574 Pa. 202, 830 A.2d 519, 528 (2003) (citing Commonwealth v. Brown, 538 Pa. 410, 648 A.2d 1177, 1189, (1994)); Commonwealth v. Smith, 580 Pa. 392, 861 A.2d 892, 896 (2005) (citing Commonwealth v. Drumheller, 570 Pa. 117, 808 A.2d 893, 908 (2002)).

In the case at bar, the finding of contempt was not against the weight of the evidence. As previously discussed, defendant repeatedly and consistently assured this Court that Kennedy was on active duty with the military. Defendant Marsh made these representations to this Court despite his alleged uncertainty about their truthfulness, and he persisted in misrepresenting to this Court his knowledge regarding Kennedy's status with the military even after being warned by this Court of the consequences if his misrepresentations proved to be inaccurate. At the contempt hearing, Kennedy testified that he and Defendant Marsh never discussed whether he was on active duty nor did they specifically discuss whether he should wear his military uniform to court. Notwithstanding all of his assurances during jury selection that he believed Kennedy was on active duty based upon representations made by Kennedy and his stepfather, Defendant Marsh later claimed that he actually did not know what the term "active duty" meant. He further stated that he was indifferent to Kennedy wearing his uniform during court proceedings. The Court found this testimony to be patently incredible. This Court did not believe that Defendant Marsh and Kennedy never discussed the uniform and Kennedy's military status. Furthermore, this Court was incredulous that Defendant Marsh later claimed that he did not know what "active duty" meant or that he did not care about Kennedy's ability to wear his uniform. This is particularly incredulous in light of Defendant Marsh's repeated and adamant affirmations that

14

Kennedy was on active duty and his insistence that Kennedy should be permitted to wear his uniform. Obviously, Defendant Marsh believed his client would derive some benefit in the eyes of the jury by appearing in court in a military uniform. The Court, serving as factfinder, chose to believe none of the evidence offered by Defendant Marsh at the contempt hearing, and instead found that Defendant Marsh had recklessly or intentionally misled the Court. In light of this Court's credibility determinations, it cannot be said that the contempt finding was so contrary to the evidence so as to shock one's sense of justice. Therefore, the finding of contempt was not against the weight of the evidence and this Court's decision should not be disturbed on appeal.

## CONCLUSION

After a review of the applicable rules of evidence, statutes, case law and testimony, this Court committed no error. The evidence was sufficient to find Defendant Marsh in contempt. The Court's finding of contempt was not against the weight of the evidence. Therefore, this Court's decision should be upheld on appeal.

**BY THE COURT:**

_____ J.

16